# Richmond.

## SHENANDOAH VALLEY RAILROAD CO. V. LUCADO'S ADM'R.

### DECEMBER 5th, 1889.

EMPLOYER AND EMPLOYEE—*Injury to employee—Contributory negligence—Case at bar.*—On a very dark night, after an unprecedented rain from which danger to the railroad track ·was apprehended, in consequence of which, extraordinary precautions were taken by the officials to prevent accidents, an employee, who had for many months been in the service as a section hand, was detailed as a watchman and directed to walk back and forth between two points on the track. Whilst so doing, he met a train that had been sent out with hands to remove obstructions or to make repairs. Employee signalled the train to stop. The foreman of the hands enquired of him as to the condition of the track, and he answered, "all right," down to a red light about 200 yards beyond where the injury occurred. Employee, without invitation or objection mounted on the engine, contrary to the company's rules and his instructions. Train proceeded cautiously at the rate not exceeding four miles an hour. It had not gone far, when a sudden cry of alarm was uttered by the foreman, and all except the engineer and employee leaped off just in time to save themselves. The engineman and employee were carried down with the engine into a chasm in the road-bed and thence into the river. Employee was caught fast in the wreck, and in a little while the rapidly rising water submerged and drowned him. Copies of the rules had been distributed among the section foremen. In an action by the administrator of the deceased, against the company to recover damages for the negligent killing of the deceased: *held*, intestate was chargeable with notice of the rules, and being on the engine contrary to them and to his instructions, his administrator could not recover damages for the injury, which, but for his own misconduct, could not have happened.

Argued at Staunton.    Decided at Richmond.

Error to judgment of circuit court of Botetourt county, rendered January 2, 1888, in an action on the case wherein Robert Lucado's administrator was plaintiff, and Sydney F. Tyler, receiver of the Shenandoah Valley railroad company, was defendant. The verdict and the judgment being for the plaintiff, the defendant brought the case here upon writ of error. Opinion states the case.

*W. H. Travers*, and *Edmund Pendleton*, for the plaintiff in error.

*Wm. A. Anderson*, for the defendant in error.

Lewis, P., delivered the opinion of the court.

This is a writ of error to a judgment of the circuit court of Botetourt county, in an action of trespass on the case, wherein the administrator of Robert Lucado, deceased, was plaintiff, and Sidney F. Tyler, receiver of the Shenandoah Valley railroad company, was defendant. The action was brought to recover damages for the alleged negligent killing of the plaintiff's intestate, on the night of the 29th of October, 1885, whilst in the employ of the defendant as a track hand, temporarily detailed as an extra watchman. His death was caused by the derailment of a locomotive on which he was riding, and that was occasioned by a wash-out in the road-bed, which caused the engine to roll down into the edge of the river, near the track, when the deceased, unfortunately, was drowned.

At the trial there was a verdict for the plaintiff for $8,000 damages, which the defendant moved the court to set aside, but the motion was overruled, and judgment entered on the verdict, whereupon the case on a writ of error was brought to this court.

The contention of the defendant in error, the plaintiff below, is that the deceased was rightfully on the engine, and that his

death was caused by the defective construction of the road-bed and track, and without fault on his part. But after a careful consideration of the case we are of the opinion that this position is untenable.

The facts disclosed by the record, so far as it is necessary to state them, are substantially these: The deceased, on the night of the accident, was detailed to watch the track for a certain distance, and to give warning of any signs of danger that he might discover. There had been a severe, in fact an almost unprecedented rain, just before, from which danger to the track was apprehended, and in consequence of which extraordinary precautions seem to have been taken by the officials of the company to prevent accidents.

At a point, a short distance below, or north, of the place where the accident occurred, there was a crack in the railroad embankment, which another employee was ordered to watch with a red light. A red light is a well understood signal of danger, and to enginemen it means to "stop." From this point, about seven o'clock in the evening, the deceased, with a lantern in his hand, started up the track to go over his beat, which extended up the track about three-quarters of a mile from that point. The night was very dark.

How often the deceased passed over his beat, if more than once, does not appear. His orders, however, were peremptory to be vigilant, and to "*walk backwards and forwards over the track*" between the points indicated. There was evidence for the plaintiff tending to show that his beat extended up the track a greater distance than three-quarters of a mile. But be that as it may, it is certain that he had the opportunity to pass over it several times, at least, before the accident occurred. The watchman with the red light above mentioned testifies that he saw nothing of the deceased from the time he started out, at seven o'clock, until after the accident, which occurred a little after ten o'clock that night. The deceased, a few minutes before that time, was at a point on the track, less than a mile

Shen. Valley R. R. Co. *v.* Lucado's Adm'r.    393

Opinion.

from where he started out, when a ballast train approached from the south.   This train had been sent out with a force of hands to remove any obstructions, or to make any repairs, that might be found necessary for the safety of the track.   Driscoll, the foreman of the construction force, was riding on the engine, and Egan, a supervisor of repairs, was in the rear or tool car. The deceased was acting under the orders of Jennings, a section foreman.   When the train came up, the deceased signalled it to stop, and it did so.   When it stopped, Driscoll inquired of the deceased as to the condition of the track, to which he replied that it was "all right" down to the red light above mentioned, which was about two hundred yards beyond the fatal spot.

He then, without any order or invitation, express or implied, from any one, got on the engine, which thereupon proceeded down the track in the direction of the red light.   It moved slowly and cautiously at a rate not exceeding three or four miles an hour, so slowly, according to the evidence, that the deceased could easily have gone on foot in front of it; and both Driscoll and Egan testify that a man would have been sent in front from that point, but for the assurance of the deceased that the track was safe.   The train, however, had not gone far when a sudden cry of alarm was uttered by Driscoll, who was looking out, and all on the engine, except the engineman and the deceased, jumped off, just in time to save themselves.   The engineman and the deceased were carried down with the engine into a chasm in the road bed, and thence into the river, along the margin of which the road was built.   The deceased was caught fast in the wreck, and in a little while the rapidly rising water submerged and drowned him.

Rule 107 of the "Train Rules" of the company provides that no person shall be permitted to ride "on an engine without an order from the superintendent or superintendent of motive power, except the engineman, fireman, road foreman of en-

gines, train masters, assistant engineers, and supervisors on their respective divisions, and conductors in discharge of their duties." These rules were in force, and had been for several years, when the accident occurred, although they had not been formally promulgated by the receiver after his appointment. They are printed, and copies of them had been duly furnished to section foremen, Jennings among the number, for the guidance of themselves and the men under their charge. The deceased had been in the employ of the company as a section hand for many months prior to the accident, and the presumption is that he was acquainted with the rule above quoted. At all events, the fair inference from the record is that he had reasonable opportunity to become acquainted with it, which, for the purposes of the present case, is equivalent to actual knowledge.

The evidence also shows, and it is conceded, that had he not gotten on the engine, he would not have been injured.

Can this action, then, be maintained? We think not. It would be strange indeed, if it could be. The deceased in getting on the engine not only disobeyed his positive instructions *to walk* upon the track, but violated the general rules of the company also; and but for his deceptive report that the track was safe, it is a moral certainty, if we can believe the uncontradicted evidence in the case, that the accident would not have happened.

The case is a much stronger one than *Roach* v. *Va. Midland R. R. Co.*, 83 Va., 375, in which case it was held that the plaintiff, who was injured while riding on a locomotive, was not entitled to recover; and authority to the same effect is abundant.

That the deceased was himself the author of his misfortune, is too plain to admit of doubt. And it makes no difference that his riding on the engine was not objected to by those in charge of the train, for they were as much bound by the rules of the company as he was. So that when he got on the engine

Shen. Valley R. R. Co. *v.* Lucado's Adm'r.      395

Opinion.

he did so wrongfully, and at his own risk, and his representative, on the facts appearing in the record, has no recourse against the company for the consequences of his own misconduct.   *Railroad Company* v. *Jones*, 95 U. S., 439; *Darracott* v. *Chesapeake & Ohio R. R. Co.*, 83 Va., 288.

Judgment reversed.