FRANCIS v. THE KANSAS CITY, ST. JOSEPH & COUNCIL BLUFFS RAILROAD COMPANY, *Appellant.*

Division Two, May 31, 1892.

1.  **Railroad:** EMPLOYES: RULES: NEGLIGENCE. Railroads and others employing servants in complex and dangerous business should prescribe rules for its orderly and safe management, and failure to do so constitutes negligence, for which the master is responsible.

Francis v. The Kansas City, St. J. & C. B. Ry. Co.

2.    ——: ——: ——: ——. Where the master, however, makes and promulgates rules for the safety of the servant, the former is not liable for injuries resulting to the servant, which their observance would have prevented.

3.    ——: ——: ——: ——. A switchman, who is injured while violating an express rule of the railroad company, which forbids jumping on a switch engine while it is in motion, by standing in the middle of the track, and stepping on the footboard, is guilty of contributory negligence.

4.    ——: ——: VIOLATION OF RULES. Such rule is, not rendered nugatory by the fact that the employes violated it at will, where the evidence shows that it was enforced by the company, and the rule itself stated that the yardmen were in the habit of jumping on engines in the manner forbidden, and that its express purpose was to put an end to the practice.

5.    ——: KNOWLEDGE OF RULE: JURY QUESTION. Whether or not the switchman had knowledge of the existence of the rule was, under the facts and circumstances in evidence in the case, a question for the determination of the jury.

6.    ——: REASONABLENESS OF RULE: INSTRUCTION. The jury should have been instructed "that the rule is reasonable, and defendant company had the right to require switchmen in its service to conform their actions to its provisions, while performing their duties as such switchmen."

7.    ——: KNOWLEDGE: RULE: INSTRUCTION. The jury ought to have been instructed that plaintiff's right of recovery depended on whether he was active in violation of a known rule of the company which was in force in its yards at the time of the injury.

*Appeal from Buchanan Circuit Court.*—HON. OLIVER M. SPENCER, Judge.

REVERSED AND REMANDED.

*C. A. Mosman* for appellant.

(1)  This is not a question of contributory negligence at all.    Wherever a violation of the rules of the master for the conduct of his business is a producing cause of injury to the servant, that violation is a complete defense to the master, regardless of whether the violation was in itself negligent.    The

servant cannot incur a risk, consequent upon a viola-
tion of the master's orders, on the master's responsibil-
ity. He can only do so at his own risk. *Gardner v.
Railroad*, 58 Mich. 584; *Railroad v. Ryan*, 7 S. W. Rep.
83; *Pilkington v. Railroad*, 7 S. W. Rep. 805; *Railroad
v. Whitcomb*, 111 Ind. 212; *Lockwood v. Railroad*, 55
Wis. 50; *Woolsey v. Railroad*, 33 Oh. St. 227; *Deeds v.
Railroad*, 74 Iowa, 54; *Durgin v. Munson*, 9 Allen, 396;
*Shanny v. Androscoggin Mills*, 66 Me. 420; *Railroad v.
Husson*, 101 Pa. St. 1; *Chambers v. Railroad*, 94 N. C.
475. (2) The court should have sustained the
demurrer to the evidence, because of the contributory
negligence of the deceased. (3) The record fails to
disclose that the injury of Francis was due in any
degree to the incompetency of the engineer. *Roul v.
Railroad*, 11 S. E. Rep. 558; *Kersey's Case*, 79 Mo. 362;
*Corcoran's Case*, 16 S. W. Rep. 411; *Hudson's Case*, 101
Mo. 13; *Bell v. Railroad*, 86 Mo. 599; *Dowell v.
Railroad*, 61 Miss. 691. (4) The court committed
error in giving and refusing instructions.

*James W. Boyd* and *Benjamin Phillip* for respond-
ent.

(1) The evidence shows that plaintiff's husband,
Charles Francis, was run over and killed by a locomo-
tive or engine belonging to defendant, in charge of and
being operated by the defendant's servant, Preston;
that said Preston was incompetent, unskilful, unfit and
not capable of handling or running said engine; that
on account of said Preston's incompetency and unskil-
fulness and inability to handle and run said engine
said Francis was run over and killed; and that such
incompetency and unfitness were known to the defend-
ant for such a length of time before the accident, that
in the exercise of ordinary care and diligence the

defendant could have discharged said incompetent and unfit engineer. Under such circumstances the plaintiff being the widow of said Francis can recover in this action. *Rolling Stock Co. v. Wilder*, 116 Ill. 100; *Harper v. Railroad*, 47 Mo. 567; *Connor v. Railroad*, 59 Mo. 285; *Gormley v. Iron Works*, 61 Mo. 492; *Kersey v. Railroad*, 79 Mo. 362; *Neilson v. Railroad*, 85 Mo. 599; *Railroad v. Meyers*, 65 Tex. 110; *Railroad v. Ruby*, 38 Ind. 294; *Gillman v. Railroad*, 13 Allen (Mass.) 433. (2) Notice of the incompetency and unfitness and inability of said Preston to handle and run said engine, and of his negligence and carelessness in handling and operating the same given to Cummings, who had authority and power to control, govern, direct and even remove said Preston from his engine, was notice to the defendant. *McDermott v. Railroad*, 73 Mo. 516; *Verry v. Co.*, 47 Iowa, 549; *Huntington v. Decker*, 82 Pa. St. 123; *Dowling v. Gerard*, 74 Mo. 13; *Moore v. Railroad*, 85 Mo. 588. (3) There is no evidence in this case even tending to show that Francis had any knowledge of the notice mentioned in the evidence and shown in appellant's abstract at page 64. Still, whether he had any such knowledge or not was submitted to the jury on the instructions asked by the appellant, and the jury found that Francis had no knowledge of said notice. (4) Under the evidence the court could not declare as a matter of law, and as is contended by the appellant, that Francis was guilty of such contributory negligence in standing in front of the engine while it was moving towards him, as would bar a recovery by his widow in this case. Where, from the undisputed facts, different inferences can be fairly drawn, the question of negligence should be submitted to the jury. *Huber v. Railroad*, 92 Mo. 450; *Mauerman v. Siemerts*, 71 Mo. 101; *Nagel v. Railroad*, 75 Mo. 653; *Boland v. City*, 32 Mo. App. 8; *Corrister*

*v. Railroad*, 25 Mo. App. 619; *Tabler v. Railroad*, 93 Mo. 79; *Kidings v. Railroad*, 33 Mo. App. 527; *Barry v. Railroad*, 98 Mo. 62; *Kinney v. City*, 35 Mo. App. 97. (5) The court did not commit error in giving plaintiff's first instruction. Although the relation of the plaintiff to Charles Francis was not admitted, still the undisputed evidence is that the plaintiff was the wife of Charles Francis. It is not error to assume in an instruction facts to be true which are undisputed. *Bank v. Hatch*, 98 Mo. 376; *Herriman v. Railroad*, 27 Mo. 435; *Walker v. City of Kansas*, 99 Mo. 647; *State v. Moore*, 101 Mo. 316; *Rice v. McFarland*, 41 Mo. App. 489.

*Justus W. Brockett*, also, for respondent.

MACFARLANE, J.—Action for damages on account of the death of plaintiff's husband, Charles Francis, by the alleged negligence of defendant. Deceased, plaintiff's husband, was in the employ of defendant in the capacity of a switchman in its yards at St. Joseph. While in the performance of his duties as switchman, on the night of March 27, 1888, he was struck and killed by the switch engine with which he was working.

The charge of negligence, made in the petition, consisted in the employment of an incompetent and unskilful engineer, who was ignorant of the signals in use in the yards, by which the switching crew was governed; in retaining such engineer in its service after notice of such incompetency, unskilfulness and ignorance, and by and through the incompetency, negligence, unskilfulness, and disregard of signals by said engineer, the collision and death was occasioned.

The answer was a general denial, a plea that the injuries and consequent death of Charles Francis was the result of one of the usual and ordinary perils of his

employment in which he was engaged, and which he assumed, and a plea of contributory negligence.

The yards of defendant at St. Joseph extend north and south. At the extreme north end of the yards the passenger tracks are on the east and the freight tracks on the west. These tracks are connected by a transfer track used for transferring cars from one track to the other. A switch engine differs from a road engine in having no pilot or "cow-catcher," but instead a board is extended across in front, which is used by switchmen to stand on while the engine is moving, and while coupling cars to the front end of the engine. The engineer, fireman and three switchmen constituted the crew, Charles Francis being one of the switchmen. The engine and crew had been at work in the yard, and moved up north for the purpose of transferring the engine from the passenger to the freight tracks. The duty of deceased required him to open the switch from the passenger to the transfer track. The engine moved backward north, deceased riding on it, until it passed the switch far enough to clear it, and stopped. Deceased got off the engine and threw the switch, the engine then moved forward south over the switch onto the transfer track, and, a few feet south of the switch, struck deceased, while occupying a position between the rails, near the west one, ran over and crushed his legs, from which he afterwards died. These facts are practically undisputed. The controverted facts relate to the signals given the engineer at this point, and the manner in which they were responded to, and will be considered in discussing the legal questions involved.

At the time of this accident, and for some time previous, a strike among the engineers of defendant existed, and many of them had left the road. There was also discontent among the switchmen, though up to that time no actual strike had occurred. The engi-

neer, of whom complaint was made, was employed by defendant two days prior to the accident, and this was the second night he had worked in the yards, deceased also working with him the first night. There is no evidence tending to prove a want of proper care on the part of defendant in its employment of the engineer, and in its examinations and tests of his competency. There was evidence tending to prove that the engineer was not familiar with the signals in use in defendant's yards, or was either negligent of their observance, or incompetent to respond to them promptly and carefully, and that defendant had notice of these deficiencies before the injuries to deceased.

Defendant had a rule in force at the time of this accident which forbade switchmen and others from jumping on engines, while in motion, from the middle of the track. That Charles Francis stood between the rails of the track as the engine approached him for the purpose of stepping upon the footboard in front, is undisputed. The evidence tended to prove that Francis signaled the engine forward; that when it got very near him it checked its speed for a moment, as Francis undertook to step upon the board, and immediately spurted forward causing him to lose his footing, and the wheels to pass over him.

Defendant insists that the judgment in this case should be reversed on any one of two principal grounds: *First.* That the injury was caused by disobedience of a positive rule adopted for the safety of switchmen. *Second.* That the injury was caused by the negligence of deceased in standing between the rails in front of a moving engine, and attempting to get upon it from that position. These propositions were both raised under the refusal of the court to direct a verdict for defendant under all the evidence. Other minor questions are also insisted upon.

I.  The rule referred to in the statement was as follows:

"St. Joseph, Mo., May 12, 1887.

"*To Foremen, Switchmen and others:*

"It has become quite a practice for the yardmen, as well as others, to jump on and off switch engines while they are in motion, by standing in the middle of the track and stepping onto the footboard.  *   *   *  This practice must be stopped.  Yard and trainmen wishing to get on switch engines must get on from the sides.  *   *   *  Parties getting on and off engines while they are in motion do so at their own risk.

"S. P. Jeffries,

"J. R. Hardy,                        Trainmaster.

"Superintendent."

The engine by which Francis was killed was provided with a footboard in the rear, and one on each side of the tender, beside the one in front of the engine.  That deceased undertook to get upon this engine in a manner directly and positively prohibited by this salutary rule, and in the attempt was struck and killed, stands undisputed upon the record in this case.  There was proof of no emergency or other necessity offered in excuse for his conduct.  The act was deliberate, and, for all that appears, wholly unnecessary.  What should be the legal effect of this conduct as affecting the right of recovery in this case.

The duties of engineers and switchmen in the yards of railroads in moving cars and engines over complex net work of tracks and switches are exceedingly hazardous, and common humanity demands that the persons or corporations employing them should use reasonable precautions for securing their safety.  Hence, it is said in *Reagan v. Railroad*, 93 Mo. 352:  "One who employs servants in complex and dangerous

business ought to prescribe rules sufficient for its orderly and safe management. His failure to do so is a personal negligence, for the consequences of which he is liable to his servants." As is also said in another jurisdiction: "The law imposes upon a railroad company the duty to its employes of diligent care * * * to make and promulgate rules, which, if faithfully observed, will give reasonable protection to the employes." *Abel v. President,* 103 N. Y. 581.

It would be most unreasonable and unjust, after imposing upon the master the duty of promulgating a rule for securing the safety of his servant, to permit the servant to recover from the master damages for injuries which the observance of the rule would have prevented. As the master is bound at his peril to make the rules, the servant should be equally bound at his peril to obey them. In such case the disaster is brought upon the servant by his own voluntary act, and he, and not the master who had discharged his duty, should bear the consequences. So it has been uniformly ruled. *Schaub v. Railroad,* 106 Mo. 74; *Alcorn v. Railroad,* 108 Mo. 81; *Railroad v. Thomas,* 51 Miss. 641; *Shanny v. Androscoggin Mills,* 66 Me. 429; *Lockwood v. Railroad,* 55 Wis. 50; *Zumwalt v. Railroad,* 35 Mo. App. 667; *Lyon v. Railroad,* 31 Mich. 429. See also other cases cited in brief of counsel.

II. It is said by counsel that this rule was nugatory for the reason that the employes violated it at their own will and pleasure. We are not of that opinion. The rule itself shows and recites that yardmen were in the habit of jumping on engines in the manner prohibited, and the express purpose of the rule was declared to be to put an end to this practice.

It has been held by this court that, if there was an established usage on the part of those employes whose conduct a rule was intended to regulate, known and

acquiesced in by their superior officers, to disregard the rule, one of such employes should not be held guilty of contributory negligence for its violation. *Barry v. Railroad*, 98 Mo. 69.

There is no evidence here showing an established usage of violating the rule on the part of yardmen, nor an acquiescence on the part of their superior officers in even a single infraction. On the contrary, C. D. Smith, one of plaintiff's own witnesses, testified very positively that the rule was not only in force in the yard, but was enforced by defendant.

III. That Francis was not bound by the rule, unless he had knowledge of its existence, is unquestioned. The difficulties in the case lie here. It was shown that the rule was copied into an order book, where all special instructions to employes were kept. The book was kept in the office of the trainmaster, where the train and yardmen had access to it. It was also posted "in the roundhouse and machine shops in the middle yard." "It was put up in the yardmaster's office in the middle yard. The business of the yardmen and switchmen called them into that office every day more or less;" so testified trainmaster Jeffries, and I find no evidence conflicting with what he says. The court instructed the jury that if the rule was "so posted or published then said Francis was bound by said rule, and it was not necessary that the defendant should prove that said Francis did actually read or know the contents of said rule." Certainly defendant could claim no more favorable instruction than this.

But, it is properly claimed, that if the instruction correctly declared the law, there being no conflict in the evidence that the rule was posted and published, as the jury was required to find, then there was no question of fact for the jury, and the court should have declared, as a matter of law, that deceased had knowl-

edge of the rule, and was bound by it. Juries are to try issues of fact. When the facts are indisputed, no issue remains for a jury to determine. Yet, we are not willing to go the length this instruction goes in presuming notice, and are unwilling to say, as a matter of law, that defendant had notice of the rule, because it had been recorded in an order book and posted in public places, where the duties of yardmen called. Unquestionably, notice may be presumed under certain states of facts and circumstances, depending upon the character and effect of the rule, the length of the service of the person to be charged, the manner in which it was promulgated and kept before those to be affected by it. *Alcorn v. Railroad*, 108 Mo. 81; *Railroad v. Lucado's Adm'r*, 86 Va. 390 (10 S. E. Rep. 422).

It would be unreasonable to charge one with constructive notice of a rule which the evidence fails to show was posted during the term of his employment. Under the facts and circumstances as developed in this case, the jury should have determined whether Francis had, or did not have, notice of the rule.

IV. From what has been said it follows that this instruction asked by defendant should have been given: "19. The court instructs the jury that the rule read in evidence is reasonable, and the defendant company had the right to require switchmen in its service to conform their actions to its provisions while performing their duties as such switchmen." *Deeds v. Railroad*, 74 Iowa, 154; *Wolsey v. Railroad*, 33 Oh. St. 234.

V. It does seem from a common-sense standpoint the grossest negligence for one, however extensive his experience, to stand between the rails, in front of a moving engine, for the purpose of stepping upon it as it approaches, when a misstep, a slip, a stumble, or

a moment's hesitation on his part, or an irregular movement of the engine, would result in almost certain disaster. Still, if, without a rule forbidding such practice, it had grown into a common custom among yardmen, as one of the methods used in the discharge of their duties, and was known to be such by the master, then deceased only assumed the risk of injury ordinarily incident to such a hazardous practice; he did not assume the risk of injury from the negligence of an engineer who was incompetent or careless, and who was retained by the master after knowledge of such incompetency.    Deceased was entitled to require of the master diligence and care in providing a competent, careful and skilful engineer.    After that he took upon himself the risks of injury from his own voluntary methods of discharging his duties.    *Loeffler v. Railroad*, 96 Mo. 270; *Price v. Railroad*, 77 Mo. 508; *Gibbons v. Railrodd*, 66 Iowa, 231; *Railroad v. Jones*, 95 U. S. 443.

VI.   Plaintiff's right of recovery should have been made to depend upon whether he was acting in violation of a known rule of the defendant company which was in force in its yards at the time of the injury, and the jury should have been so instructed.

Judgment   reversed   and   cause   remanded.   All concur.