ATCHISON, T. & S. F. R. CO. v. REESMAN.

(Circuit Court of Appeals, Eighth Circuit. February 12, 1894.)

No. 240.

1. RAILROAD COMPANIES—NEGLIGENCE—FENCES—INJURY TO EMPLOYE.
    Where, through the failure of a railroad company to erect and maintain sufficient fences, as required by Rev. St. Mo. 1889, § 2611, an animal gets on the track, causing the derailment of a train, an employe on the train, who is injured by the accident, is entitled to sue the company therefor, since such statutes are designed to protect the persons on trains as well as the cattle owners.

2. SAME—NEGLIGENCE OF FELLOW SERVANT.
    The defense that the insufficiency of the fence was caused by the negligence of a fellow servant is not available, since the duty of fencing, cast by the statute upon the company itself, cannot be delegated by it to its servants.

3. **TRIAL—OBJECTIONS TO EVIDENCE—WAIVER.**

> Where the company has introduced evidence as to repairs made by it on the fence after the accident, it cannot complain of the admission of further evidence on that point offered by the plaintiff in rebuttal.

4. **MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE —VIOLATION OF RULES.**

> The mere knowledge and assent of the conductor of a train to a violation by a brakeman on the train of a rule of the company requiring him to be on top of the car, in order to give signals to the engineer, does not exonerate the brakeman from the charge of contributory negligence for injuries received by him in consequence of his violation of such rule.

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

Action by David B. Reesman against the Atchison, Topeka & Santa Fe Railroad Company for personal injuries. Plaintiff obtained judgment. Defendant brings error.

Gardiner Lathrop and Ben Eli Guthrie, for plaintiff in error.

B. R. Dysart and John F. Mitchell (Joseph Park, on the brief), for defendant in error.

Before BREWER, Circuit Justice, and SANBORN, Circuit Judge.

BREWER, Circuit Justice. This was an action to recover damages for personal injuries. Plaintiff below (defendant in error) was on the 17th day of June, 1891, in the employ of the railroad company as brakeman. He had been in such employ for about three years. At the time of the injury he was on a ditching train, composed of an engine and four cars, the engine pushing the cars. Just in front of the engine was a flat car, then a car on which the ditching machine was placed, then a box car fitted up for the men to sleep in, and in front of that a way car or caboose. Plaintiff had been at work on this train only eight or ten days, though for two years he had been acting as brakeman between Marceline, Mo., and Ft. Madison, Iowa, and was therefore familiar with the track at the place where the injury happened. On the morning of June 17th the train left Marceline for the purpose of doing work at a place six miles east thereof. The track, for some distance, was nearly straight. After going about a mile and a half, and while running at a rate of speed of from 15 to 18 miles an hour, the train ran over a steer, which derailed it, and caused the plaintiff's injury. The crew of the train consisted of the engineer and fireman, conductor, head brakeman, and the plaintiff,—the rear brakeman. From the time of leaving Marceline up to the time of the accident, the conductor and the plaintiff were on the platform of the caboose at the head of the train. The head brakeman was on the inside, in the cupola, while there was no one on top. The ditching machine had arms or dippers extending on either side in such a manner and to such an extent as to interfere with the view of the engineer of the front end of the train. Rule 104 of defendant's rules was in force at the time of the accident, and is as follows:

> "When a train is being pushed by an engine (except when shifting and making up trains in yards) a flagman must be stationed in a conspicuous position on the front of the leading car, so as to perceive the first sign of danger, and immediately signal the engineer."

There was testimony on the part of the defendant tending to show that the conspicuous place on the ditching train, within the meaning of that rule, was on top of the caboose, where the flagman could be seen by the engineer whenever he made any signals, and that it was the plaintiff's duty to be at that place. The burden of the plaintiff's case was that the defendant company had negligently suffered the fences along its right of way to become and remain out of repair, and insufficient to keep cattle off the track; that in consequence thereof a steer broke through such insufficient fence, got upon the track, and derailed the train, causing the injury to plaintiff. The defendant denied that this steer entered onto the track through any defective or insufficient fence; claimed that, even if it did, the duty to erect and maintain a fence was not one which would avail one or its employes in an action for damages resulting from a neglect of such duty; and, third, that the plaintiff was guilty of contributory negligence, in not being in his proper place, on top of the caboose, and in a place where he could see the danger, and give the signal to the engineer.

The provision of the Missouri Statutes in reference to the fencing of railroad tracks is found in Rev. St. Mo. 1889, p. 659, § 2611. The first part of the section is as follows:

"Every railroad corporation formed or to be formed in this state, and every corporation to be formed under this article, or any railroad corporation running or operating any railroad in this state, shall erect and maintain lawful fences on the sides of the road where the same passes through, along or adjoining inclosed or cultivated fields or uninclosed lands, with openings and gates therein, to be hung and have latches or hooks, so that they may be easily opened and shut, at all necessary farm crossings of the road, for the use of the proprietors or owners of the land adjoining such railroad, and also to construct and maintain cattle guards, where fences are required, sufficient to prevent horses, cattle, mules and all other animals from getting on the railroad; and until fences, openings, gates and farm crossings and cattle guards as aforesaid shall be made and maintained, such corporation shall be liable in double the amount of all damages which shall be done by its agents, engines or cars to horses, cattle, mules or other animals on said road, or by reason of any horses, cattle, mules or other animals escaping from or coming upon said lands, fields or enclosures occasioned in either case by the failure to construct or maintain such fences or cattle guards. After such fences, gates, farm crossings and cattle guards shall be duly made and maintained, said corporation shall not be liable for any such damage unless negligently or willfully done."

Following this provision are others, giving adjoining proprietors the right to construct the fences on the failure of the railroad company so to do, and recover the cost thereof from the company, and declaring that any person leading or driving stock onto the track within such fences should forfeit and pay a sum not exceeding $10, and should also pay to the party injured all damages sustained thereby.

In respect to the liability of the company under this section, the court gave this instruction to the jury:

"If the jury believe from the evidence that the defendant suffered the fence along its right of way to become and remain out of repair in the manner described by plaintiff's witnesses, so that cattle could with little difficulty get through or under the fence, and if you believe from the evidence that, by reason of its being so out of repair and defective, a steer did in that manner

go upon defendant's right of way and track, and cause the derailment of the ditching train, by which plaintiff was injured, then you will be authorized to return a verdict in plaintiff's favor, provided you further believe from the evidence that defendant's section men in charge of that section had knowledge of the defect in the fence in time to have repaired it before the accident, or that such defect in the fence had existed for such length of time that, by the exercise of ordinary care, they ought to have had knowledge of it, and repaired it, before the derailment."

And refused an instruction that, under the pleadings and evidence, the plaintiff was not entitled to recover.

In this is presented the most important question arising in this case. The contention of the company is that the fence statute referred to was enacted for the benefit of the proprietors of adjoining lands, and that the plaintiff, as an employe of the railroad company, takes nothing by reason of the failure of the company to comply with its terms. It is doubtless true that, when a right is given by statute, only those to whom the right is in terms given can avail themselves of its benefits, but it does not follow that when a duty is so imposed a violation of that duty exposes the wrongdoer to liability to no person other than those specifically named in the statute. On the contrary, it is not unreasonable to say that every party who suffers injury by reason of the violation of any duty is entitled to recover for such injuries. At any rate, it is clear that the fact that certain classes of persons were intended to be primarily protected by the discharge of a statutory duty will not necessarily prevent others, neither named nor intended as primary beneficiaries, from maintaining an action to recover for injuries caused by the violation of such legislative command. It may well be said that, though primarily intended for the benefit of one class, it was also intended for the protection of all who need such protection. In this case a technical argument might be made from the mere language of the section. It provides that the corporation shall be liable in double the amount of all damages, not only for those "done by its agents, engines or cars to horses, cattle," etc., but also for those done "by reason of any horses, cattle," etc., "escaping" from such contiguous fields. As the presence of the steer on the track was the cause of the derailing of the train, and as that steer escaped from the adjoining field through the defective fence, it may plausibly be argued that the recovery in this case comes within the express language of the statute, as being for damages done by reason of the escape of the steer from the adjoining field through the defective fence. But we do not care to rest our conclusions upon this technical construction. The purpose of fence laws, of this character, is not solely the protection of proprietors of adjoining fields. It is also to secure safety to trains. That there should be no obstruction on the track is a matter of the utmost importance to those who are called upon to ride on railroad trains. Whether that obstruction be a log placed by some wrongdoer, or an animal straying on the track, the danger to the trains, and those who are traveling thereon, is the same. To prevent such obstruction being one of the purposes of the statute, any one whose business calls him to be on a train has a right to complain of the com-

pany, if it fails to comply with this statutory duty.    The authorities are clear on this proposition.    In the case of Hayes v. Railroad Co., 111 U. S. 228, 4 Sup. Ct. 369, the facts were these:    A railroad company was required by an ordinance of a municipal corporation to erect a fence upon the line of its road, within the corporate limits.    It failed to comply with this ordinance, and the plaintiff, a boy of tender years, while running near the track, fell on it, and was run over by the passing cars.    An action having been brought to recover for such injuries, the trial court directed a verdict and judgment for the defendant, but this judgment was reversed by the supreme court.    Mr. Justice Matthews, in the course of his opinion, discussed the question of general liability in these words:

"It is said, however, that it does not follow that, whenever a statutory duty is created, any person who can show that he has sustained injuries from the nonperformance of that duty can maintain an action for damages against the person on whom the duty is imposed; and we are referred to the case of Atkinson v. Waterworks Co., 2 Exch. Div. 441, as authority for that proposition; qualifying, as it does, the broad doctrine stated by Lord Campbell in Couch v. Steel, 3 El. & Bl. 402.    But accepting the more limited doctrine admitted in the language of Lord Cairns in the case cited,—that whether such an action can be maintained must depend on the 'purview of the legislature in the particular statute, and the language which they have there employed,'—we think the right to sue, under the circumstances of the present case, clearly within its limits.    In the analogous case of fences required by the statute as a protection for animals, an action is given to the owners for the loss caused by the breach of the duty.    And although, in the case of injury to persons by reason of the same default, the failure to fence is not, as in the case of animals, conclusive of the liability, irrespective of negligence, yet an action will lie for the personal injury, and this breach of duty will be evidence of negligence.    The duty is due, not to the city as a municipal body, but to the public, considered as composed of individual persons; and each person specially injured by the breach of the obligation is entitled to his individual compensation, and to an action for its recovery.    The nature of the duty,' said Judge Cooley in Taylor v. Railroad Co., 45 Mich. 74, 7 N. W. 728, 'and the benefits to be accomplished through its performance, must generally determine whether it is a duty to the public in part or exclusively, or whether individuals may claim that it is a duty imposed wholly or in part for their especial benefit.'    See, also, Railroad Co.  v. Terhune, 50 Ill. 151; Schmidt v. Railway Co., 23 Wis. 186; Siemers v. Eisen, 54 Cal. 418; Railroad Co. v. Loomis, 13 Ill. 548; Railroad Co. v. McClelland, 25 Ill. 140; Railroad Co. v. Dunn, 78 Ill. 197; Massoth v. Canal Co., 64 N. Y. 524; Baltimore & O. R. Co. v. State, 29 Md. 252; Pollock v. Railroad Co., 124 Mass. 158; Cooley, Torts. 657."

And again, answering the objection that the want of a fence was not the proximate cause of the injury, observes as follows:

"It is further argued that the direction of the court below was right, because the want of a fence could not reasonably be alleged as the cause of the injury.    In the sense of an efficient cause, causa causans, this is no doubt strictly true, but that is not the sense in which the law uses the term in this connection.    The question is, was it causa sine qua non? (a cause which, if it had not existed, the injury would not have taken place,—an occasional cause;)  and that is a question of fact, unless the causal connection is evidently not proximate.    Railroad Co. v. Kellogg, 94 U. S. 469.    The rule laid down by Willes, J., in Daniel v. Railway Co., L. R. 3 C. P. 216, 222, and approved by the exchequer chamber (Id. 591) and by the house of lords (L. R. 5 H. L. 45), was this: 'It is necessary for the plaintiff to establish by evidence circumstances from which it may fairly be inferred that there is

reasonable probability that the accident resulted from the want of some precaution which the defendant might and ought to have resorted to.' "

Another case—and it is exactly in point—is that of Donnegan v. Erhardt, 119 N. Y. 468, 23 N. E. 1051. In discussing this question the court said:

"A railroad company, for the safety of its passengers, as well as its employes upon its engines and cars, is bound to use suitable care and skill in furnishing, not only adequate engines and cars, but also a safe and proper track and roadbed. The track must be properly laid and the roadbed properly constructed, and reasonable prudence and care must be exercised in keeping the track free from obstructions, animate and inanimate; and if, from want of proper care, such obstructions are permitted to be and come upon the track, and a train is thereby wrecked, and any person thereon is injured, the railroad company, upon plain common-law principles, must be held responsible. Experience shows that animals may stray upon a railroad track, and, if they do, there is danger that the train may come in collision with them, and be wrecked. Adequate measures, reasonable in their nature, must be taken to guard against such danger. Independently of any statutory requirement, a jury might find, upon the facts of a case, that it was the duty of a railroad company to fence its track to guard against such danger. But, whatever the rule would be independently of the statute, there is no reasonable doubt that it imposes the absolute duty upon a railroad company to fence its tracks. That duty, it is reasonable to suppose, was imposed, not only to protect the lives of animals, but also to protect human beings upon railroad trains. It is made an unqualified duty, and for a violation thereof, causing injury, the railroad company incurs responsibility. The sole consequence of an omission of the statutory duty is not specified, and was not intended to be specified, in the statute. Responsibility for injury to animals was specially imposed because in most cases there would, independently of the statute, have been no such responsibility, as at common law the owner of animals was bound to restrain them, and if they trespassed upon the railroad there was no liability for their destruction, unless it was willfully or intentionally caused. We are therefore of the opinion that the railroad company was responsible to the plaintiff for the injuries he received without any fault on his part, and for this conclusion there is much authority in judicial utterances;" citing a large number of cases, and overruling the case of Langlois v. Railroad Co., 19 Barb. 364, so far as it holds a different doctrine.

See, also, Quackenbush v. Railroad Co., 62 Wis. 411, 22 N. W. 519.

In Thornton on Private Fences and Railroad Crossings (page 571), it is said that:

"The cases are full of expressions touching the object of a statute requiring railroad companies to fence their rights of way, and there is an almost unanimous opinion that it is not only to protect domestic animals, but to protect the passengers on the trains."

So, also, in Missouri,—the state where this cause of action arose. In Trice v. Railroad Co., 49 Mo. 438, 440, the court, referring to the claim that the provisions of a section substantially like the one in controversy were for the exclusive benefit of the landowner, observed:

"But such is not the theory upon which this statute has been uniformly sustained. While the protection of the property of adjacent proprietors is an incidental object to the statute, its main and leading one is the protection of the traveling public. To insure such protection, railroads are imperatively required to fence their tracks, and the penal liability deemed necessary to enforce this requirement is a matter of legislative discretion."

To like effect are the cases of Isabel v. Railroad Co., 60 Mo. 475; Barnett v. Railroad Co., 68 Mo. 56; Rutledge v. Railroad Co., 78

Mo. 286; Silver v. Railroad Co., Id. 528; Rozzelle v. Railroad Co., 79 Mo. 349.

Nor is there anything in the cases of Berry v. Railroad Co., 65 Mo. 172; Harrington v. Railroad Co., 71 Mo. 384; Johnson v. Railway Co., 80 Mo. 620; Peddicord v. Railway Co., 85 Mo. 160,—cited by plaintiff in error,—antagonistic to the views expressed in the cases cited. The proposition is laid down, it is true, that remote landowners were not within the protection of the statute, and that it was intended for the owners of contiguous lands, but nowhere is it said that protection to the traveling public was not also one of the objects intended to be secured by the statute. And, if the purpose is to protect the traveling public, a party riding upon a train may invoke the statute, in case injury results to him through the failure of the company to comply with its requirements, because he is one of the parties for whose benefit it was enacted. Within the reasoning of all these authorities, and by the express decision of Donnegan v. Erhardt and Quackenbush v. Railroad Co., supra, an employe has the same right as a passenger to complain of injuries caused by a violation of duties imposed by such a statute. The purpose is protection to the train. All who are on that train are exposed to equal danger. It is not a case where the employe has the means of protecting himself, and the tr. eler not, for if the train be derailed the danger to each is equal. It is urged, however, by the defendant, that the failure to keep the fence in repair is the negligence of a coemploye, and that, therefore, it is not responsible. But the duty is cast by the statute upon the company, and it is cast as an absolute duty. It must erect and maintain safe and secure fences. It is a duty whose object is the securing a safe place for the employes on the train to do their work, and that, as is known, is an absolute duty cast upon the company, responsibility for neglect of which cannot be evaded by intrusting it to some employe. Our conclusion, therefore, is that there was no error in the instructions of the court in respect to this matter, and that the law is that if, through a failure of the company to erect and maintain a sufficient fence as required by the statute, an animal gets onto the track, whereby a train is derailed, and an employe on that train is injured by such derailment, the latter is entitled to maintain his action for damages against the company.

A second objection is to the admission of testimony as to work done subsequently to the accident in the way of repair to the fence at the place where the steer entered upon the track, and we are referred to the two cases of Railroad Co. v. Hawthorne, 144 U. S. 202, 12 Sup. Ct. 591, and Alcorn v. Railroad Co., 108 Mo. 81, 18 S. W. 188, as authorities for the proposition that proof of such subsequent repairs is not admissible in evidence for the purpose of showing the existence of a defect. But the difficulty with the objection is that this testimony was introduced, at least in the first place, by the company itself. After proof of such repairs had been made by the company, the mere fact that the plaintiff, on his rebuttal, introduced further testimony in reference to the matter, is not sufficient to justify any interference with the verdict. It is unnecessary to

inquire whether the court erred in not giving, when requested, an instruction as to the consideration to be given to this testimony, for on the new trial, which we are compelled to award, probably no such question will be presented.

The only remaining matter that we notice is in respect to the instructions concerning contributory negligence. This instruction was asked by the defendant, and refused:

"If the jury believe from the evidence that plaintiff voluntarily assumed his position on the platform of the way car, and that, under defendant's rules, his proper place was on top of that car, and if the jury further believe from the evidence that he was not in such position, and that, by reason of his failure to be on top, he was unable to immediately signal the engineer on first perceiving the steer, and thereby contributed in any way to produce the wreck and his consequent injury, then he cannot recover."

It is obvious that if there was in the charge no reference to the matter of contributory negligence, and the case stood alone upon the refusal to give this instruction, the ruling could not be sustained. But the court did refer to the matter; and the question to be determined is whether the charge, as given, fully and accurately stated the law in respect to contributory negligence, so as to obviate any objection which arises from the failure to give this instruction. This was its language:

"Again, it is suggested (and it seems to be claimed) that Reesman was guilty of contributory negligence in not taking a proper position on the way car, and with reference to that specification of negligence the court gives you this instruction: It was the duty of Reesman to comply with the rules made by the defendant company for the government of its brakemen. If a rule of the company required Reesman to be on top of the way car on the occasion of the accident, and he was on the rear platform, without the consent of the conductor, then he was guilty of such contributory negligence as will prevent a recovery, provided you believe that his being on the platform, instead of on the top of the way car, helped, in any direct way, to occasion the derailment; but if being on the platform, instead of on the top of the car, did not in any way help to occasion the accident, or if Reesman was on the platform with the knowledge and consent of the conductor of the train, under whose orders he worked, then he was not guilty of contributory negligence merely because he was on the platform, though the rule did require him to be on the top or roof of the car. In other words, gentlemen, although they may have had rules requiring him to be on the roof of the car, and he was not on the roof, yet, unless you are able to say that if he had been on the roof the accident would not have occurred, why the fact that he was not on the roof is no defense. It is not contributory negligence, such as will preclude the plaintiff from recovering. If the position which he took on that rear platform on the morning of the accident was a position which he took with the knowledge and consent of the conductor who had charge of the train, the fact that he was there, and not on the roof of the car, does not make him guilty of contributory negligence, notwithstanding the rule which has been read in evidence."

The proposition here plainly stated is that if plaintiff disobeyed the rules of the company, and such disobedience contributed directly to the injury, he may nevertheless recover, and cannot be held guilty of contributory negligence, providing that such disobedience was with the knowledge and consent of the conductor of the train. Or, in other words, if the conductor fails to enforce the rules of the company the employe may knowingly disregard them, and yet in no manner be barred from recovering for injuries which would not have

resulted but for such disobedience. With that doctrine we cannot concur. It is not pretended that the conductor directed the plain-tiff to remain on the platform, and not go onto the top of the caboose. A different question may arise in case the violation of the rules of the company is in obedience to a direct command from the immediate superintendent, but a decision of that question is unnecessary in this case. The duty of obedience to the rules of the employer is one resting alike upon all employes; and, when an employe claims to recover from his employer for injuries resulting through the latter's negligence, he cannot escape the consequences of his own act contributing to such injury—an act done in known violation of the rules of such employer—on the ground that his immediate superintendent knew and assented to such act of violation. If it were otherwise, then the supineness and negligence of any superintending officer of a corporation would relieve a subordinate from responsibility for his own conduct. In other words, the wrong of one employe is excused by a like wrong of another. The employe injured through his own omission of duty escapes liability for such omission because some other employe is equally careless. The question has not infrequently arisen whether knowledge and assent on the part of the conductor, or other official on a train, of a violation of one of the rules of the company by a passenger, relieves the latter from the burden of contributory negligence arising from such violation, and the response has almost uniformly been in the negative. It is true that in those cases the party injured was not an employe, subject to the control of the officer whose knowledge and assent to the violation was relied upon as an excuse, but the principle underlying is the same. The question is not one of obedience to orders, but of a compliance with rules; and, generally speaking, the duty of compliance is not waived by the mere fact that some controlling official has knowledge of the failure to comply. In the case of Railroad Co. v. Jones, 95 U. S. 439, the party injured, who, though an employe, was not employed on the train or subject to the control of the conductor, was riding on the pilot of the locomotive, contrary to the directions of his employer, but with the knowledge and assent of the persons in charge of the train; and it was held that his thus riding was contributory negligence and not excused, the court observing, "The knowledge, assent, or direction of the company's agents as to what he did is immaterial." In Railroad Co. v. Langdon, 92 Pa. St. 21, the plaintiff, a passenger, was injured while riding in the baggage car in violation of the rules of the company. It was held that he could not recover, although such riding was with the knowledge of the conductor of the train. In the course of the opinion the court said, "We are unable to see how a conductor, in violation of a known rule of the company, can license a man to occupy a position of danger, so as to make the company responsible." See, also, the following cases: Hickey v. Railroad Co., 14 Allen, 429; Railroad Co. v. Moore, 49 Tex. 31; Railroad Co. v. Roach, 83 Va. 375, 5 S. E. 175; Railroad Co. v. Lucado's Adm'r, 86 Va. 390, 10 S. E. 422; Railroad Co. v. Davis (Ala.) 9 South. 252. Nor is there anything in the case of Railroad Co. v. Nickels (decided by this court) 4 U. S.

App. 369, 1 C. C. A. 625, 50 Fed. 718, in conflict with the views herein expressed. In that case a brakeman was injured while coupling a car, and on the trial an instruction was asked of the court to direct a verdict for defendant on the ground of the contributory negligence of the plaintiff, in failing to use a stick in making such coupling, as required by the rule of the company, which instruction was refused, and the matter of negligence submitted to the jury. There was testimony tending to show that the rule was universally disregarded, and that the superintendent of the road was fully aware of its constant violation; and it was held that under the circumstances the jury were at liberty to consider whether the rule was not, in effect, abrogated. The court thus disposed of the question (page 382, 4 U. S. App., page 625, 1 C. C. A., and page 718, 50 Fed.):

"To hold that this defendant company could make this rule on paper, call it to plaintiff's attention, and give him written notice that he must obey it, and be bound by it, one day, and know and acquiesce, without complaint or objection, in the complete disregard of it by the plaintiff, and all its other employes associated with him on every day he was in its service, and then escape liability to him for an injury caused by its own breach of duty towards the plaintiff, because he disregarded this rule, would be neither good morals nor good law. Actions are often more effective than words, and it will not do to say that neither the plaintiff nor the jury was authorized to believe, from the long-continued acquiescence of the defendant in the disregard of this rule, that it had been abandoned, and that it was not in force. The evidence of such abandonment was competent and ample, and the ruling and charge of the court below on this subject were right."

It is unnecessary to pursue this matter further. It may be laid down as a general rule that the mere knowledge and assent of his immediate superior to a violation by an employe of a known rule of the company—the employer—will not, as a matter of law, relieve such employe from the consequences of such violation. The judgment of the court below must be reversed, and the case remanded for a new trial.