Zinc Co. v. Smith.

## AMERICAN ZINC CO. *v.* SMITH.*

### (*Knoxville.* September Term, 1913.)

1. **MASTER AND SERVANT.** Master's liability. Servant's duty to obey rule. "Nondelegable."

While in instances the giving of signals may be the nondelegable duty of the master, the term "nondelegable" does not .mean that the master may not impose upon a servant the duty of giving signals prescribed for his own safety, and where such signals are not given at such a place as his duty requires he cannot recover for injury resulting therefrom. (*Post, p.* 451.)

Cases cited and approved: Atchison, etc., R. Co. v. Reesman, 60 Fed., 370; New York, etc., R. Co. v. Ropp, 76 Ohio St., 449.

2. **MASTER AND SERVANT.** Master's liability. Noncompliance with rules.

Deceased, with other machinists, descended in a mining shaft to repair a pump after being warned by the master carpenter, repairing the upper part of the shaft, that they should not come into the shaft until they notified him by knocking on a pipe; but when the repair was finished the foreman said, "Come on," and went into the hoisting basket, followed by deceased, who. as he was getting into the basket, was hit by a piece of timber falling from the carpenters' work and killed. *Held,* that deceased had no right to infer that the foreman had obeyed the rule as to notice, and that, as he himself could have given notice, his failure to observe the rule was negligence, defeating a re-covery. (*Post, p.* 454.)

Case cited and approved: Central R. Co. v. Kitchens, 83 Ga., 83.

---

*The authorities on the question of the duty of the servant in regard to the rules promulgated by his employer are collated in a note in 43 L. R. A., 350, 363. And for disobedience of master's rules as contributory negligence, see note in 24 L. R. A., 657.

The question whether the duty of the master to instruct or warn servants is delegable is the subject of a note in 26 L. R. A. (N. S.), 624.

Zinc Co. v. Smith.

FROM KNOX.

Appeal from Circuit Court, Knox County.—Von A. Huffaker, Judge.

Cornick, Frantz, McConnell & Seymour, for appellant.

Pickle, Turner & Kennerly, for appellee.

Mr. Justice Williams delivered the opinion of the Court.

This suit was brought by Mrs. Bertie Smith to recover of the American Zinc Company for the death of her husband, James C. Smith, which occurred in a mining operation.

Deceased was an experienced machinist in the employ of the company, under a master machinist, Edleman, his foreman, and at the time was engaged in attending to the repair of pumps in the mine then being driven. He was ordered by Edleman to accompany him and a second assistant, Caine, down a shaft of the mine to repair a pump. The three used for descent a hoisting apparatus. A head carpenter and several assistants were engaged in lining the shaft with lumber, and as the three machinists started down the head carpenter cautioned all of them to signal to him

by tapping on a pipe line, that extended up the shaft, before coming from the pump into the shaft to make the ascent; this, so that the carpentry crew could discontinue work above and avoid injury to the machinists by falling timber being worked by the carpenters or by rock dislodged by them. After fixing the pump, the deceased, Smith, for the machinists, before going from the pump into the shaft, tapped on the pipe line without direction from his foreman so far as the proof shows. The head carpenter gave a return signal that all was right, and the machinists reached the surface in safety.

The pump did not work promptly, and Foreman Edleman again took his crew down the shaft to give it further attention, when they were again warned by the head carpenter: "Whatever you do, don't come about that shaft until you let me know you are coming."

These warnings were in accord with a rule of the company in proof to this effect: "The rule of the mine with respect to the protection of the men coming into the shaft where the timbering was going on was that anybody coming to the bottom of the shaft would knock on the pipe, and the timbermen were to answer by rapping on the pipe and calling down." The proof further establishes that under the rule any workman desiring to go up the shaft was to give the signal or to see that it was given. In going into the shaft for the second ascent, no signal was given by either of the three machinists. Foreman Edleman said, "Come on, we

will ascend to the surface," and all started together. Edleman went to the hoisting basket, and got in; Caine followed next, and got in; and as deceased approached the basket and was in the act of getting in, a block of timber fell from where the carpenters were at work, about 180 feet above, and hit and instantly killed Smith.

It appears from the testimony that the pump was located out of danger range about eight feet from the shaft, and that the sound produced by tapping on the pipe line could be heard for several hundred feet from the shaft.

The company made a motion for peremptory instructions in its favor, but this was overruled. The case went to a jury, which gave plaintiff a verdict.

The disposition of the case in the court of civil appeals is best shown by an excerpt from its opinion, as follows:

"The sole question in this case, as we view it, is: Was the foreman guilty of negligence in failing to notify the carpenters at work above them in the shaft of the fact that they were entering the elevator to be carried to the surface?

"The proof is not clear as to what was said when the foreman said to the deceased and the other employee, 'Let us return to the surface.' As a matter of fact, he entered the basket of the elevator first, and it was his duty to tap the pipe to notify the carpenters above of the fact that they were there to be carried to the surface.

"The case runs along a narrow margin, but we think the deceased lost his life by virtue of this negligence of the foreman, and the whole charge of the trial judge embraced in the assignments of error revolves around this sole question as to whether or not the foreman was guilty of negligence in failing to notify the carpenters above that they were entering the elevator for the purpose of being carried to the surface. If it was also the duty of the deceased to notify them, then his representative could not recover in this case; but we think he had the right to rely upon the fact that the foreman, who preceded him in entering the elevator, had notified the carpenters above of their intention to be carried to the surface."

It will be noted that the court of civil appeals held that, if it was the duty of the deceased, Smith, to notify the carpenters above, by means of the signal, there could be no recovery in this case. This is a true conception and statement of the law. While in instances the giving of signals may be the nondelegable duty of the master, it is not meant by the word "nondelegable" that the master may not impose the duty upon a given employee to give signals prescribed for his own safety.

"An action cannot be maintained where it was the duty of the injured servant to direct other employees by means of signals, and the injury was due to the fact that those signals were improperly given, or were not given at such time and place as his duty required."

3 Labatt, Master & Servant (2 Ed.), sec. 1260; 26 Cyc., 1264.

While the proof does show that the duty to give the signal was imposed upon Edleman, as foreman, it also further shows that the same duty under the rule rested equally and alike upon deceased.

That court was further of the view, as we construe the opinion, that deceased had the right to rely upon the fact, as excusing him from giving the signal, that the foreman, Edleman, in leading the way to the basket for ascent, had given the signal, and therefore its ruling was in favor of the plaintiff on the motion for peremptory instructions.

As was indicated by the court of civil appeals, the margin for liability was, in its opinion, a narrow one, and the authorities ruling the point appear to be by no means numerous.

In the case of *Atchison, etc., R. Co.* v. *Reesman,* 60 Fed., 370, 378, 9 C. C. A., 20, 28, 23 L. R. A., 768, 772, it was urged in behalf of an injured brakeman, plaintiff, that his disobedience of the company's rules, though it contributed to his injury, should not be accounted to him as contributory negligence, because the disobedience was with the knowledge and consent of the conductor as his superior. Mr. Justice Brewer, sitting at circuit as circuit justice, delivering the opinion of the court, said: "The duty of obedience to the rules of the employer is one resting alike upon all employees; and, when an employee claims to recover from his employer for injuries resulting through the latter's

negligence, he cannot escape the consequences of his own act contributing to such injury—an act done in known violation of the rules of such employer—on the ground that his immediate superintendent knew and assented to such act of violation. If it were otherwise, then the supineness and negligence of any superintending officer of a corporation would relieve a subordinate from responsibilty for his own conduct. In other words, the wrong of one employee is excused by a like wrong of another. The employee injured through his own omission of duty escapes liability for such omission because some other employee is equally careless.''

The recent case of *New York, etc., R. Co.* v. *Ropp,* 76 Ohio St., 449, 81 N. E., 748, 11 L. R. A. (N. S.), 413, involved a claim of an employee (Ropp) that his failure to obey a rule respecting signaling was excused by the presence and consent of his superior (Whalen). The court said: "This theory of the case does not seem to us to be tenable. For aught that appears, the rules were equally obligatory on both Whalen and the plaintiff. They certainly were binding on the plaintiff, and the violation of the rules by Whalen, whether he were a superior or not, could not release the plaintiff from his contractual obligation, which was made for the benefit of both himself and his employer. . . . . Neither can such authority [of Whalen to suspend the rule as to Ropp] be implied from the fact that Whalen had authority to direct and control the plaintiff in the performance of his duties as a car repairer. His authority to control and direct was authority to

control and direct within the limitations .of the rules prescribed by the company for the government of all employees. .. . . Nor had the plaintiff the right to infer a waiver of the rule in any case. There is not even room for an argument from the necessity of the case; for the plaintiff could have obeyed the order of his superior and still have protected himself from injury by obeying the rule.''

We need not, in the pending case, hold that a superior cannot in any case, for lack of authority, so order an inferior employee as to free the latter from the obligation of a given rule binding alike on both, for here there was no order or direction proceeding from the superior to Smith to disregard the rule prescribed for their protection. This was also true in the Ohio case, in which the court further, in this connection, wrote: ''Although the plaintiff had not been told by Whalen to disregard the rule, and although he had not looked to see if the signals were placed, and nothing had been said on the subject,'' it is claimed that ''he had the right when called by Whalen to come and help him on the repairs on which Whalen was working, to take it for granted that Whalen had done his duty, or to infer from Whalen's conduct and surrounding circumstances that the rule was suspended for the time being''—and the court denied that the plaintiff employee had the right to so infer. See, also, *Central R. Co.* v. *Kitchens,* 83 Ga., 83, 9 S. E., 827; 26 Cyc., 1270.

In our opinion, the rule thus last declared is sound, and,· further, that it is applicable to the facts of the

case at bar. Smith had no right to infer that Edleman was by closer attention and compliance absolving him from an observance of the rule, reinforced by the cautions given immediately before to him and Edleman alike. If it be conceived that Edleman directed Smith to follow him out into the shaft and into the basket, then for aught that appears Smith could have done so, and also have complied with the rule by tapping the signal on the pipe line. If Edleman disregarded the rule, that fact did not operate to acquit deceased of negligence in respect of his own omission.

Other contentions are disposed of orally.

The motion for peremptory instructions should have been sustained. Reversed, with judgment here in accord.