Williams v. The Mo. Pac. Ry. Co.

WILLIAMS v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

DIVISION ONE.

1.  **Master and Servant:** DUTY OF MASTER IN EMPLOYING SERVANT. The master must use ordinary care in employing and retaining competent and suitable servants; this is a personal duty resting on the master, and he is liable for a failure to perform it which results in an injury to a fellow-servant.

2.  **Practice, Appellate:** CONFLICTING EVIDENCE. The supreme court will not interfere with the finding of the jury in case of conflicting evidence, on the ground that the evidence does not support the verdict.

3.  **Railroad:** SERVANT: KNOWLEDGE OF INCOMPETENCY. In an action against a railroad company for injuries to a brakeman claimed to have been caused by the negligence of the engineer of the train, who, it is alleged, was an incompetent and unfit person for the service because of intemperate habits, the fact that the foreman of defendant's roundhouse, whose duty it was to look after the engines and men and make reports to his superior, had heard that the engineer was drinking too much was sufficient evidence from which the jury might conclude that defendant knew of such habits.

4.  ———: NEGLIGENCE. The evidence *held* to show gross negligence on the engineer's part in backing his train against wrecked cars, thereby injuring plaintiff, though he may not have seen plaintiff's signals to stop nor have been intoxicated at the time.

5.  **Contributory Negligence, Defense of.** The burden of pleading and proving contributory negligence is on the defendant.

6.  ———: INSTRUCTION. The evidence showed that the engineer had been in the defendant's service five or six years, that plaintiff had but a slight acquaintance with him, having made but one trip with him before the accident. The court refused to instruct the jury that "if plaintiff had equal means of knowledge with defendant in ascertaining the alleged incompetence of the engineer, then plaintiff was not entitled to recover." *Held* that the instruction was rightly refused.

7.  ———: KNOWLEDGE OF FELLOW-SERVANT'S INCOMPETENCY. The mere fact that plaintiff continued in defendant's service after knowl-

edge of the engineer's incompetency would not necessarily defeat the former's action for damages, it being for the jury to say from all the attending circumstances whether plaintiff was guilty of contributory negligence.

*Appeal from Jackson Circuit Court.*—HON. JAMES GIBSON, Judge.

AFFIRMED.

*Elijah Robinson* for appellant.

(1)  The court should have directed the jury to find for the defendant. *Huffman v. Railroad*, 78 Mo. 50; Wood on Master & Servant, sec. 419, p. 800; *Zumwalt v. Railroad*, 35 Mo. App. 661.  The burden of showing incompetency on the part of Clark, and notice of this fact to defendant, rested on plaintiff. *Murphy v. Railroad*, 71 Mo. 202; *Lee v. Works*, 62 Mo. 565; *Moss v. Railroad*, 49 Mo. 167; Shearman & Redfield on Negligence, sec. 99; *Railroad v. Sullivan*, 63 Ill. 293. There is an entire want of evidence tending to show that the accident was occasioned, either by intoxication on the part of Clark at the time the accident occurred, or by reason of any effect his previous habits of intoxication had produced on him, if such previous habits had in fact existed. *Zumwalt v. Railroad*, 35 Mo. App. 661; *Mathiason v. Mayer*, 90 Mo. 585; *Harlan v. Railroad*, 65 Mo. 25; *Henry v. Railroad*, 76 Mo. 293.  (2)  The plaintiff's first instruction should not have been given.  *First.*  It assumed that plaintiff was, at the time of the accident, exercising ordinary care, instead of submitting to the jury the question as to whether he was, in fact, exercising ordinary care. *Stoher v. Railroad*, 91 Mo. 509; *Stocker v. Green*, 94 Mo. 280; *Kramer v. Mason*, 96 Mo. 559; *Liggett v. Morgan*, 98 Mo. 39; *Robertson v. Drane*, 100 Mo. 273. *Second.*  There was no evidence on which to base such

an instruction.  *Third.*  It was too general and indefi-
nite.  It did not submit to the jury the question of the
existence of any particular fact as to incompetency, but
left them to form their own opinions as to what would
constitute incompetency, without any guide or direc-
tions whatever.  (3) The plaintiff's second instruction
should have been refused, because there was no evi-
dence tending to show that" previous habits of intem-
perance" had produced any "effect" on Clark, which
rendered him incompetent.  (4) Instruction, num-
bered 1, given by the court, while probably correct as
an abstract proposition of law, was not based on any
evidence in the case.  There was not a particle of evi-
dence tending to show that Clark had used intoxicating
liquor to such an extent as to render him incapable of
exercising ordinary care as a locomotive engineer.
(5)  Defendant's instruction, numbered 2, should have
been given.  If defendant had reason to believe, either
from personal observation, or from inquiry of persons
likely to know, that Clark was fit and competent, then
it was not liable.  *Moss v. Railroad,* 49 Mo. 167.
(6)  Defendant's instruction, numbered 3, should have
been given.  There is no pretense that defendant had
actual knowledge of Clark's incompetency, if he was
incompetent, and if plaintiff had equal means of knowl-
edge with defendant he ought not to recover.  *Cum-
mins v. Collins,* 61 Mo. 520; *Williams v. Clough,* 3
H. & N. 258; *Malone v. Hawley,* 46 Cal. 409; *Porter v.
Railroad,* 71 Mo. 66; *Doyle v. Railroad,* 41 Am. & Eng.
R. R. Cases, 376.  (7)  The court should have given
defendant's instruction, numbered 4.  It contained a
full and fair definition of the term "ordinary care."
(8)  The motion in arrest should have been sustained.
The plaintiff's petition failed to show that, while con-
tinuing in the service of defendant, a fellow-servant of
the engineer, Clark, he did not know of Clark's alleged

incompetency. *Railroad v. Stupak*, 28 Am. & Eng. R. R. Cases, 323. (9) The evidence shows that plaintiff had no cause of action, and the judgment should be reversed without remanding the case. *Powell v. Railroad*, 76 Mo. 80; *Lennox v. Railroad*, 76 Mo. 86; *Schenck v. Sautter*, 73 Mo. 46; *Quay v. Lucas*, 25 Mo. App. 4; *Moore v. Hutchison*, 69 Mo. 429.

*E. A. Andrews* and *John W. Beebe* for respondent.

(1) There was abundant evidence showing Clark was an unfit and incompetent person to be intrusted with the duties of a locomotive engineer, and that defendant's officers knew of the fact, or, by the exercise of reasonable care, might have known of it. (2) Once having established this incompetency and an act of gross negligence on his part resulting in the defendant's injury, the burden was upon the defendant to show that the negligence and injury were not referable to his incompetency, but to some other cause. *Kean v. Copper Mills*, 66 Mich. 227; *Railroad v. Brooks*, 57 Pa. St. 343; *Maxwell v. Railroad*, 85 Mo. 95. To say that Clark's negligent act could not properly be referred to his unfitness without proof that, at the time of the accident, he was in a state of complete intoxication, is to leave out of the question the *gravamen* of the charge made in the petition, viz., that, from a long-continued use and abuse of alcoholic stimulants his physical and nervous system had been affected to such an extent that he was not a fit and suitable person to be intrusted with the duties of a locomotive engineer. See authorities, *supra*, and Wood's Master & Servant [2 Ed.] 77; Shearman & Redfield on Negligence [4 Ed.] secs. 38-60; *Rine v. Railroad*, 100 Mo. 234; Abbott's Trial Evidence, sec. 84; *Dowell v. Guthrie*, 99 Mo. 665; *Railroad v. Sullivan*, 63 Ill. 293; *Hilts v. Railroad*, 55

Mich. 437. (3) Plaintiff's first instruction does not assume that plaintiff, at the time of the accident, was exercising ordinary care; that question was fairly and thoroughly submitted to the jury by both plaintiff and defendant in their instructions. (4) The criticism of plaintiff's second instruction is without merit. The evidence was conclusive that Clark's habits of intemperance had produced an effect upon him which rendered him unfit for his duties as locomotive engineer. The same remarks may be made in regard to the court's instruction, numbered 1. (5) The question whether, in the exercise of ordinary care, plaintiff might have known of Clark's incompetency, was submitted to the jury by both plaintiff and defendant in their instructions. (6) There was evidence sufficient to charge defendant with actual knowledge of Clark's habits of intemperance and unfitness, and this is assumed in defendant's own instructions. (7) It was not necessary that the petition, under our practice, should negative the knowledge of Clark's incompetency, by plaintiff. That was a matter of defense, and should have been averred in the answer. In no view can such a contention be made for the first time after verdict. Besides, as the answer denies Clark's incompetency, it thus of itself negatived the idea of Clark's knowledge, and is a matter of aider in pleading. *Crane v. Railroad*, 87 Mo. 588; *Donaldson v. Butler Co.*, 98 Mo. 163; *Stock Co. v. Wilder*, 116 Ill. 100.

BLACK, J.—Plaintiff brought this suit to recover damages for injuries received while in the employ of defendant as head brakeman on a freight train on the defendant's branch road from Pleasant Hill to Nevada. The cause of action, speaking in general terms, is that plaintiff was injured by reason of the negligence of the engineer, who, it is alleged, was an incompetent and

unfit person for the service, because of intemperate habits. Verdict and judgment for plaintiff.

The train gang was composed of Reed, conductor; Otis Clark, engineer; Joy, fireman; plaintiff, head brakeman, and two other brakemen. The train left Pleasant Hill in the forenoon of the third of December, 1886, and reached a station called Archie in the afternoon. There the train was sidetracked, and the conductor, engineer and fireman went with the engine to another station for water, and returned late in the afternoon. The plaintiff then coupled the engine to the train and got in the cab. From this station there was an up grade for two hundred yards, and then a down grade for at least one mile. In going over the hill the train broke in two, and some of the detached cars were derailed. The engine and eight cars attached to it went on for a mile or so and stopped. Plaintiff then left the cab and went to the car next to the rear one. As to what then transpired he says: "I gave Clark, the engineer, a slow signal to back up. He commenced backing, and, after going two hundred yards, I signaled him to stop. I could then see the derailed portion of the train. We were at least a half-mile from it. I stood over on his side of the train and kept giving him the signal to stop. He came faster and faster and ran into the wrecked cars, and that was the last I knew for a long time. I could see the cab of the engine, and there was nothing to prevent him from seeing the signals if he had looked. It was his duty to obey the signals, but he paid no attention to them. The speed was continually increasing until the collision." This witness testified, on a former trial, that he was standing on the middle of the car next to the rear one when he gave the signals.

The fireman says there was a wind and snow storm at the time of the accident, so that one could not see

more than a car back from the engine; that he looked out from his side of the cab but could not see the signals. He states, however, that Clark said, "I see them over here," having reference to the signals.

There is a vast amount of evidence bearing upon Clark's intemperate habits. This evidence discloses these facts: Prior to 1880 he ran a passenger locomotive on another road. From that date to his death in 1887 he ran a freight engine on the defendant's branch road, and during that time had his headquarters at Pleasant Hill. The evidence of the proprietor and porter of the hotel where he boarded, and two or three saloon keepers at that place, is to the effect that Clark was a habitual drinker from 1880 to his death; that he often staid in a saloon for a whole day at a time; that he bought liquor by the bottle as well as the drink, and took the bottles to his room; that he was often intoxicated and seldom free from the influence of whiskey. One of these witnesses says he saw Clark drunk on the engine on one occasion, so drunk that he had to be assisted to his room when he reached Pleasant Hill. This was before the accident. The hotel keeper says Clark acted like a crazy man at all times, and kept going down to the day of his death.

A Mr. Clay, who worked at a blacksmith shop near the roundhouse where Clark came with his engine, says he often saw Clark get on and off his engine intoxicated. Mr. Preston, who was the defendant's storekeeper, says he had seen Clark under the influence of whiskey several times, but could not say whether it was before or after the accident. Plaintiff had been in the employ of the defendant for about two months. He had made only one trip with Clark before the trip in question. He was in the cab with Clark on the day of the accident and at the time the train broke in two.

Says he saw nothing wrong with Clark; that he talked with the fireman but not with Clark.

From the evidence produced by the defendant it appears Clark and the conductor, just after the accident, took the plaintiff to a station some six or seven miles distant and left him with a physician. This physician says he did not see anything to indicate that Clark was intoxicated. Joy, the fireman, says he had fired for Clark for seven or eight months; that he never saw Clark drunk while on duty, and that Clark was sober at the time of the accident. This witness admits that he stated on a former occasion that he had seen Clark under the influence of liquor. Mr. Charlton, the foreman of the roundhouse at Pleasant Hill, says he saw. Clark every day and never saw him. come in under the influence of whiskey. In the summer of 1886 he heard some talk and complaint that Clark was drinking too much, that he did not know Clark was ever intoxicated while on an engine. Mr. Lester, the traveling engine inspector, says he saw Clark once or twice a month and never saw him under the influence of liquor. The defendant examined a number of other engineers who say Clark was a good and competent engineer, and that they did not know of his drinking.

A rule of defendant was put in evidence which is in these words: "The use of intoxicating liquors of any description, by any employe of this company, is positively forbidden. Employes frequenting saloons will be discharged from the service of the company."

1. There is no dispute as to this proposition of law, namely, that the master must use ordinary care in employing and retaining competent and suitable servants. This is a personal duty devolved upon the master; and he is liable for a failure to perform this duty, resulting in an injury to a fellow-servant.

There is certainly a wide difference between the evidence produced by the plaintiff and that produced by the defendant. After reading all the evidence in this case we are forced to the conclusion that either the plaintiff's witnesses gave an exaggerated account of Clark's habits, or some of the defendant's witnesses withheld facts within their knowledge. It was the exclusive province of the jury to settle this conflict in the evidence, and we must decline to enter into any discussion as to the credit to be given to the various witnesses. Such questions have been settled by the verdict of the jury. The real question here is whether there is evidence to support the finding of the jury.

According to the plaintiff's witnesses, Clark was a habitual drinker, often drunk when off and sometimes when on duty, and was seldom free from the influence of liquor. From these facts the jury had a right to draw the inference that Clark was an unfit person to be intrusted with the responsible duties of a locomotive engineer, even in his sober intervals. The evidence shows that it requires a man of steady nerve, cautious, and not forgetful, to discharge such duties. That these elements of physical and mental strength will and do yield and give way from continued intemperate habits is but common information. Besides this, all of the defendant's witnesses, who testify upon the subject, say that a man having the habits which the plaintiff's witnesses say Clark had should not be put in charge of a locomotive engine. It requires no temperance lecture to satisfy the mind of anyone that there is an abundance of evidence to uphold and support the verdict on this issue.

2.   But it is said there is no evidence to show that the defendant knew or ought to have known of Clark's habits.   Mr. Clay says he worked from 1883 to 1886 at a shop near the roundhouse; that during that time he,

on several occasions, saw Clark get on and off his engine under the influence of liquor. If this evidence is true, then it is fair and reasonable to infer that Clark's habits were known to Mr. Charlton, the roundhouse foreman, whose duty it was to look after the engines and men and make reports to his superior. Indeed, Mr. Charlton's evidence shows that he had heard some men about the roundhouse say Clark was drinking too much. This of itself was sufficient to put the defendant upon inquiry and charge it with the information that a reasonable pursuit of the inquiry would have disclosed. The degree of care required of the master in seeing that none but competent and suitable servants are retained must depend upon the danger to be apprehended from retaining unfit servants in the particular business. Thus, more care is required in selecting and retaining engineers than in selecting and retaining firemen, brakemen or track repairers. That which would be ordinary care in selecting a fireman might fall far short of being ordinary care in the selection of an engineer, and this for the simple reason that the dangers likely to flow from the employment of an incompetent engineer are far greater than from the employment of the incompetent fireman. The very fact that the foreman of the roundhouse had heard that Clark was drinking too much is evidence from which the jury could conclude that defendant knew or ought to have been aware of Clark's habits. Add to this the other circumstances, and there is no room for doubt as to the sufficiency of the evidence on this issue.

3.    It is again said there is no evidence to show that Clark's intemperate habits had any agency in producing the collision. While there is evidence tending to show that he did not see, or may have misunderstood, the signals to stop given by the plaintiff, there is also evidence tending to show that the collision was

caused by gross negligence on the part of the engineer; for he not only paid no attention to the repeated signals, but increased the speed of the train when he must have known the wrecked cars were close at hand. We say increased the speed because there is evidence to that effect. There is also evidence, and the jury must have found, that he was unfit and incompetent to perform the duties assigned to him. These facts of themselves furnish evidence from which the jury had the right to conclude that his incompetency was the direct cause of the accident. We do not say that these facts shifted the burden of proof upon the defendant, as seems to be held in *Railroad v. Books*, 57 Pa. St. 339, but we do say they made out a *prima facie* case for the plaintiff on this issue.

4. The instructions given on both sides told the jury that, before the plaintiff could recover he must show that he had no knowledge of such intemperate habits on the part of Clark, and could not, by the exercise of ordinary care, have known of such habits and incompetency. The objection made that there is no evidence to support the finding on the issue submitted by these instructions is not well taken. In the first place the plaintiff's evidence is quite clear to the effect that he knew nothing about Clark's habits. He went into the employ of the defendant about the middle of October, 1886, and this accident occurred, as has been stated, on the third of December of the same year. He had made but one trip with Clark before the one in question. He says: "I was only slightly acquainted with him. I had known him only a few days. I boarded at the same hotel with him but did not see him very often. Sometimes I was in when he was, and sometimes I was not." This evidence is ample to justify the finding of the jury, even with the burden of proof erroneously cast upon the plaintiff. We say

erroneously because it devolved upon the defendant, not the plaintiff, to plead and prove want of care or contributory negligence on the part of the plaintiff. This is the settled rule in this state, whatever it may be elsewhere. In cases where the servant is injured by defective machinery, it is not incumbent upon the plaintiff to allege or prove want of knowledge of the defect in the appliance. That is a matter of defense. *Young v. Iron Co.*, 103 Mo. 324, and cases cited. The same rule applies where the servant is suing for injuries occasioned by the negligence of an incompetent fellow-servant. Though there was error in these instructions, still it was an error in favor of the appellant, and constitutes no ground for a reversal. The foregoing observations dispose of the further contention that the judgment should have been arrested, because the petition fails to state that plaintiff did not and by the exercise of care could not have known of the incompetency of Clark.

5. The defendant asked, but the court refused, to instruct the jury "that if the plaintiff had equal means of knowledge with the defendant, in ascertaining the alleged incompetency of the said Otis Clark, then the plaintiff is not entitled to recover." In the first place there was no evidence to warrant the giving of such an instruction. As has been said, the plaintiff had been in the defendant's employ but a short time, had made but one trip with Clark, and was but slightly acquainted with him. On the other hand, Clark had been in the employ of the defendant for five or six years, and during that time was under the eye of the defendant's foreman of the roundhouse. To say, under these circumstances, that the plaintiff and defendant had equal means of knowledge concerning Clark's habits is absurd. Besides this the instruction is not a correct statement of the law in the abstract.

The mere fact that plaintiff continued in defendant's service after knowledge of Clark's incompetency would not necessarily defeat the action.   Speaking upon this subject in an analogous case, Justice MATHEWS, for the court, says:   "The duty of the plaintiff under such circumstances is not to be determined by the single fact of his knowledge of the danger he incurred by continuing to serve with a co-employe, known by him to be an unfit and incompetent person.   It was enough for the court to say, as it did, that a failure on the part of the plaintiff to refuse to work, in view of that knowledge on his part, might be negligence on his part.   The qualification was correct, that it was for the jury to say from all the attending circumstances whether his failure to do so was, in fact, contributing negligence."   The instruction does not correctly state the law, whether taken in the abstract or as applied to the evidence in this case, and was properly refused.

The other minor objections are overruled, and the judgment is affirmed.   All concur, except SHERWOOD, P. J., who concurs in the result, and all that is said, save this, that he dissents from this proposition: "The mere fact that plaintiff continued in the defendant's service after knowledge of Clark's incompetency would not necessarily defeat the action."