Francis v. The Kansas City, St. Joseph & Council Bluffs Railroad Company, *Appellant.*

In Banc, March 19, 1895.

1. **Railroad:** SWITCHMEN: INCOMPETENCY OF ENGINEER: ASSUMPTION OF RISKS. While railway switchmen, in violation of a rule of the company, habitually board moving switch engines from the middle of the track by stepping on the footboard of the engine as it approaches, assume the risks ordinarily incident thereto, they do not assume the danger of injury from the incompetency of the engineer.

2. ———: ———: CONTRIBUTORY NEGLIGENCE: QUESTION FOR JURY. Whether the deceased was guilty of contributory negligence in boarding the switch engine as it was approaching him was, in this case, a question for the jury.

3. ———: ENGINEER: CONTRIBUTORY NEGLIGENCE: QUESTION FOR JURY. Whether the engineer negligently moved the engine just at the time deceased stepped on the footboard was also a question for the jury.

**4.** ———: ———: KNOWLEDGE OF SERVANT'S INCOMPETENCY. The fact that deceased knew that the engineer was incompetent and had so reported him to the company will not preclude a recovery for his death if the danger in working with him was not so obvious that an ordinarily prudent man would refuse to do so.

**5.** ———: ———: RULES: INSTRUCTIONS. It was proper for the court to instruct the jury that it was the company's duty to make reasonable rules for the guidance of its switchmen, and that it was the duty of the switchmen to use due care in acquainting themselves therewith.

**6.** ———: ———: NOTICE. Notice to the company's trainmaster, to the foreman of its roundhouse and to its yardmaster is notice to the company.

**7.** Appellate Practice: ERROR: ESTOPPEL. An appellant can not complain of an error in an instruction given at its instance, and which error is in its favor.

**8.** Evidence: RAILROAD: EMPLOYEES: VIOLATING RULE. Evidence that it was usual for employees to get on the footboard of a moving switch engine after the posting of the company's rule forbidding it, and that the company's officers knew of the violation of the rule and failed to reprimand them is admissible to show that the rule was habitually violated and was not in force.

**9.** ———: ———: ———. Where, in an action against a railroad for the death of an employee, the defendant attempts to show that one of plaintiff's witnesses was actuated by ill will it can not complain that the witness testified that he quit the service of the company "because he was afraid of being killed."

*Appeal from Buchanan Circuit Court.*—HON. A. M. WOODSON, Judge.

AFFIRMED.

*Spencer & Mosman* for appellant.

(1) A man of ordinary prudence and care would not have undertaken to get on the engine as Francis did, under the circumstances of this case, and Francis was guilty of negligence contributing directly to his injury in making the attempt. *English v. Railroad.* 24 Fed. Rep. 909; *Hulett v. Railroad,* 67 Mo. 239,

(2) Especially is this true where an old experienced servant, free to choose his own methods, by his choice creates a peril not incident to his duty, when prudently performed, and is injured thereby. *Gibbon. v. Railroad*, 66 Iowa, 231; *Cunningham v. Railroad*, 17 Fed. Rep. 882; *Railroad v. Estes*, 37 Kan. 715; *Railroad v. Jones*, 95 U. S. 439; *Lehigh Valley v. Greimer*, 113 Pa. St. 600; *Kesanoski v. Railroad*, 18 Fed. Rep. 229; *Martensen v. Railroad*, 60 Iowa, 705; *Yancy v. Railroad*, 93 Mo. 433; *Maxey v. Railroad*, 113 Mo. 11. (3) It was error to give plaintiff's first and sixth instructions. These instructions declared the law to be that Francis had the right to remain and continue in the service of defendant if it was reasonable for him to suppose that by the exercise of great caution and skill he could safely work with Preston. As the evidence conclusively showed that Francis failed to exercise that great caution and skill required of him, there was no evidence on which to base this instruction. *Fugler v. Bothe*, 117 Mo. 500. (4) Again, the rule in the *Conroy case* was not applicable to the case made by the evidence. This case properly fell within the common-law rule, rather than the exception, and should have been governed by that rule. *McDevitt v. Railroad*, 50 Mo. 305; *Smith v. Railroad*, 69 Mo. 38; *Renfro v. Railroad*, 86 Mo. 302; *Flynn v. Railroad*, 78 Mo. 206. (5) It was error for the court to permit plaintiff to prove an alleged custom among switchmen in respect to getting upon the footboard of an engine moving toward them from a position between the rails of the track. (6) No attempt was made to prove that this custom obtained among careful, skillful, prudent switchmen, who were considerate of their own personal safety. *Hulett v. Railroad*, 67 Mo. 239; *Steffen v. Mayor*, 96 Mo. 420; Wood's Master and Servant, secs. 746, 686; *Ring v. Railroad*, 112 Mo. 230; *Loeffler v.*

*Railroad*, 96 Mo. 270; *Price v. Railroad*, 77 Mo. 511; *Shroeder v. Railroad*, 108 Mo. 331; *Jones v. Railroad*, 95 U. S. 441; *Pruitt v. Eddy*, 115 Mo. 306; *Tetherow case*. 98 Mo. 84. (7) It was error to permit plaintiff to ask the witnesses if they ever knew of an instance in which a switchman was reprimanded for getting on an engine in that way. It was error to permit the witnesses to testify over defendant's objection, that they had never heard yardmaster Smith reprimand a man for getting on in that way. A mere foreman like Smith could not waive the enforcement of the order of his trainmaster and superintendent. *Sherman v. Railroad*, 72 Mo. 62; *Railroad v. Jones*, 95 U. S. 443.

*Jas. W. Boyd* and *Benjamin Phillip* for respondent.

(1) The evidence shows that plaintiff's husband, Charles Francis, was run over and killed by a locomotive belonging to defendant, in charge of defendant's servant Preston; that said Preston was incompetent, unskillful and incapable of handling or running said engine; that on account of said Preston's incompetency and unskillfulness and inability to handle and run said engine, said Francis was run over and killed, and that his incompetency and unfitness were known to the defendant for such a length of time before the accident that, in the exercise of ordinary care and diligence, the defendant could have discharged him before the injury to Francis. Under such circumstances, the plaintiff, being the widow of said Francis, can recover in this action. *Harper v. Railroad*, 47 Mo. 567; *Connor v. Railroad*, 59 Mo. 285; *Rolling Stock Co. v. Wilder*, 116 Ill. 100; *Gormly v. Vulcan Iron Works*, 61 Mo. 492; *Kersey v. Railroad*, 79 Mo. 362; *Neilon v. Railroad*, 85 Mo. 599; *Railroad v. Meyers*, 65 Tex. 110; *Railroad v. Ruby*, 38 Ind. 294;

*Gilman v. Railroad*, 13 Allen (Mass.), 433. (2) Notice of the incompetency, unfitness and inability of said Preston to handle and run said engine, and of his negligence and carelessness in handling and operating the same given to Cummins, who had authority and power to control, govern, direct and even remove said Preston from his engine, was notice to defendant. *McDermott v. Railroad*, 73 Mo. 516; *Dowling v. Gerard*, 74 Mo. 13; *Moore v. Railroad*, 85 Mo. 588; *Verry v. Railroad*, 47 Iowa, 549; *Huntington v. Decker*, 82 Pa. St. 123. (3) This very case has, therefore, been passed on by this court, so far as appellant's first point is concerned, and this court holds that the case presented should be submitted to the jury. *Francis v. Railroad*, 110 Mo. 387. See, also, *O'Mellia v. Railroad*, 115 Mo. 205; *Conroy v. Vulcan Iron Works*, 62 Mo. 35; *Huhn v. Railroad*, 92 Mo. 440; *Mahaney v. Railroad*, 108 Mo. 191; *Hamilton v. Mining Co.*, 108 Mo. 375; *Railroad v. Mares*, 123 U. S. 710. (4) This court can not say, as a matter of law, that Francis, who was an old experienced switchman, was guilty of contributory negligence in attempting to get upon an engine moving three or four miles an hour. *Francis v. Railroad*, 110 Mo. 387; *O'Mellia v. Railroad*, 115 Mo. 205. (5) Nor can this court say, as a matter of law, that Francis was guilty of contributory negligence in continuing to work with Preston and getting on the engine in the manner shown by plaintiff's evidence, even though he knew the engineer was unskillful and incompetent, because he had the right to do so if the danger attending it was not so obvious as to threaten immediate injury to him, or if he might reasonably have supposed that he could have done so in safety by the exercise of care and caution, and these questions were for the jury. *O'Mellia case*, 115 Mo. 205; *Francis case*, 110 Mo. 387; *Conroy v. Vulcan Iron Works*, 62 Mo. 35; *Huhn v. Railroad*, 92 Mo. 440;

*Mahaney v. Railroad*, 108 Mo. 191; *Hamilton v. Mining Co.*, 108 Mo. 375; *Railroad v. Mares*, 123 U. S. 710. (6) Where a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was contributory negligence or not, the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusions from them that the question of negligence is ever considered as one of law for the court. *O'Mellia's case*, 115 Mo. 205; *Railroad v. Ives*, 12 Sup. Ct. Rep. 679; *Huhn v. Railroad*, 92 Mo. 450; *Mauerman v. Siemerts*, 71 Mo. 101; *Nagel v. Railroad*, 75 Mo. 653; *Boland v. City of Kansas*, 32 Mo. App. 8; *Barry v. Railroad*, 98 Mo. 62; *Corrister v. Railroad*, 25 Mo. App. 619; *Tabler v. Railroad*, 93 Mo. 79. (7) It was not error to give plaintiff's third and fourth instructions. There was evidence tending to show that Jeffries, Cummings and Smith all had knowledge of the fact that the rule was repeatedly violated. And notice even to Smith was sufficient. He was the vice principal. *Williams v. Railroad*, 18 S. W. Rep. 1098; *Dowling v. Allen*, 74 Mo. 13; *Moore v. Railroad*, 85 Mo. 588; *McDermott v. Railroad*, 73 Mo. 516. (8) It is immaterial that plaintiff's sixth and defendant's ninth instructions can not be reconciled. In giving defendant's ninth instruction, the court erred in its favor and of this it can not complain. *Alexander v. Clark*, 83 Mo. 482; *Vail v. Railroad*, 28 Mo. App. 372. (9) It was not error to permit plaintiff to prove the custom among switchmen in respect to getting upon the footboard of an engine, etc.

DIVISION TWO.

GANTT, P. J.—This is the second appeal in this cause. The judgment was reversed and cause remanded at the April term, 1892. *Francis v. Railroad*,

110 Mo. 387.   The facts tending to show how the accident happened are all substantially stated in the report of the case at that time.

Plaintiff's husband, Charles Francis, was a brakeman in the employment of defendant in its yard at St. Joseph.   While engaged in his duty as such, on the night of March 27, 1888, he was killed by the switch engine with which he was working.   The alleged negligence consists in the employment of an incompetent engineer on the engine and retaining him after notice of his unskillfulness and unfitness.   The answer is a general denial, a plea that his death was occasioned by a risk he had assumed in his employment, and contributory negligence.

On the former appeal, the grounds of reversal were the want of any evidence that defendant knowingly permitted its employees to violate the following rule:

"St. Joseph, Mo., May 12, 1887.
*"To Foremen, Switchmen and Others:*

"It has become quite a practice for the yardmen, as well as others, to jump on and off switch engines while they are in motion, by standing in the middle of the track and stepping onto the footboard.

"This practice must be stopped.   Yard and trainmen wishing to get on switch engines must get on from the sides.  Parties getting on and off engines while they are in motion do so at their own risk.

"J. R. Hardy,          S. P. Jeffries,
    "Superintendent.         Trainmaster."

And the refusal of an instruction that the said rule was binding on deceased.

The evidence tended to show that this notice was posted up in the roundhouse and in the yardmaster's office in the middle of the yard.   There was a space left at the bottom of the book containing the rule in

the yardmaster's office, and all employees who read it were required to append their names. The name of deceased was not in this book. There was ample evidence on the second trial tending to show that this rule was utterly ignored by the men with the knowledge of the trainmaster and yardmaster and foreman, and the court gave the instruction which was refused on the first trial, and the rule is not seriously relied on as a defense at this time.

I. Counsel for defendant maintain that the demurrer to the evidence should have been sustained. This claim is based principally upon the fact that deceased was a bright, intelligent man, and an old and experienced switchman; that he had worked all the night previous to his death with Preston, the engineer, and if Preston was the incompetent engineer that plaintiff claims he was, and had demonstrated it on the previous night, then Mr. Francis knew it and he was guilty of recklessness in attempting to board the engine with such an engineer in charge. In a word, that a man of ordinary prudence and care would not have undertaken to get on the engine from between the rails as Mr. Francis did, with such an engineer in charge of it.

The evidence shows that, at the time of this accident, and for a month previous, the engineers of the defendant company were on a strike; that, two days previous to this accident, the defendant had employed Preston, the engineer in charge of the engine which killed Francis. This was the second night Preston had worked in the yards. Francis had worked with him the first night, and was switching for him the second night, when he was killed. There was much evidence that Preston was unskillful and incompetent; that he did not understand the signals in use in the yard, or was negligent in observing them, or incompetent to

respond promptly to them.  It was shown that Francis complained of Preston to the yardmaster Smith, and that Smith reported him to Cummings, the foreman of the roundhouse, on the night or day before Francis was hurt.

The evidence of plaintiff tended to show that, on the night of March 27, 1888, the crew with which deceased was working consisted of her husband, Shannon and Dickey.  The engine was a switch engine and had no pilot or cow-catcher, but instead thereof a footboard which extended across its front which was made for the switchmen to stand on while the engine was moving and while coupling cars on the front end of the engine.  The engine and crew had been at work in the yards and had moved north for the purpose of transferring the engine from the passenger to the freight tracks.  It was the duty of Francis to open the switch for the passage of the engine to the transfer track.  He rode on the engine till it had cleared the switch and got off and threw the switch.  He was then about twenty-five feet in front of the engine which was headed south.  He signaled the engineer with his lantern to come ahead.  The engine moved south over the switch onto the transfer track, at a rate of three or four miles an hour, and Francis stood between the rails, near the west rail, awaiting to step on the footboard.  When it was within a few feet of him, the engineer shut off the steam, and the engine plunged quickly and suddenly forward, and ran over him just as he was attempting to step on it, crushed his legs, and he died in a few hours.

On the part of defendant the evidence tended to show that the engine passed north of the cross-over and stopped.  Francis got off the engine, opened the switch and the engine moved south onto the cross-over track and stopped.  As the engine did this, Francis left the

switch stand, and ran south along the east or left hand side of the engine toward the front end, saying as he passed the engine cab, "G—d d— it, boys, go ahead; you are too slow!" The left hand side of the engine is the fireman's side, and Higdon, the fireman, who had his head out of the engine on that side of the cab, communicated the order, given by Francis, to the engineer. Francis continued to run south on the east side of the engine, which had started up in obedience to his command, until he had got a few feet in front of it, when he stopped just inside the east rail and stood there awaiting its approach. Higdon says that Francis had his lamp in his right hand, and as the engine came up to him he aimed to grab hold of the handrail and step up onto the footboard at the same time; that he missed his footing, the engine struck him, knocked him down and ran over him. Preston, the engineer, was in his proper place on the right hand side of the engine, and from there it was impossible for him to see Mr. Francis in the position which he took near the east rail on account of the obstructions produced by the upper portion of the boiler, the smokestack and sand box. The accident happened between 11 and 12 o'clock at night.

The evidence shows beyond all question that all the switchmen and the yardmaster were in the constant habit of getting on the switch engine when moving by standing in front of it between the rails and stepping on the footboard as it approached. That the defendant's officers in charge of the yards knew this hardly admits of question. Under these circumstances and this well established custom the deceased must be held to have assumed the risks ordinarily incident to such dangerous employment, but among those risks is not to be reckoned the danger of injury from an incompetent engineer. The law required of the master ordinary care in the selection of the engineer, and the evidence is over-

whelming that he was not only not skilled in his duties, but this fact was brought directly home to defendant the day before this unfortunate accident occurred. *Francis v. Railroad*, 110 Mo. 387.

But counsel for defendant urge that even conceding that Preston was incompetent inasmuch as Francis knew it and complained of him his widow can not recover. This evidence on this point is the same now as on the former appeal, and we then held that the trial court properly submitted the case to the jury on the question of the contributory negligence of deceased. We are still satisfied that ruling was correct. It was for the jury, under all the circumstances in evidence, to say whether it was such contributory negligence as would bar plaintiff if her husband stepped on the footboard attached to the engine for the very purpose of having him ride there, in discharging his duties, when it was approaching him. It was for the jury to say whether he might not reasonably have anticipated that the engineer would approach him at such a speed that he might safely get on the engine, as the evidence shows it was universally done in those yards, and that he would not make a sudden and unexpected plunge forward and knock him down. This court can not assume as a fact that no rational man would attempt thus to board a switch engine in the face of this record that all the most experienced and capable men and even the yard master in that yard habitually did do this thing, with the knowledge of those in charge. Had the engine continued to move forward at a reasonable rate of speed until it reached Francis, the evidence shows he could easily have stepped on the footboard without danger. It was necessary that he should accompany the engine and it was not to be expected that it would dash off without affording him an opportunity of getting on. Whether the engineer so negligently moved

the engine just at that time we think was eminently a question for the jury.

Nor do we think the plaintiff is barred because her husband did his duty in reporting Preston as incompetent. When this complaint was made they were told to go on, they would have to get along the best they could. He had no one to put in his place at the time.

In *Hamilton v. Rich Hill Mining Company*, 108 Mo. 375, it was said: "Where a servant, it has been broadly stated, continues in the employment after knowledge of a defect in the appliance, he thereby waives all objections to such defective instrumentality and takes upon himself all the risks. Such a doctrine makes it the duty of the servant to abandon his contract of employment, because of a breach of duty on the part of the master, and is unjust and unreasonable. Hence, it has been very much modified in many jurisdictions. A like question arose in the *Huhn case* before mentioned, where an employee of the company was injured by reason of an unblocked guardrail, and a like question arose again in *Soeder v. Railroad*, 100 Mo. 673. These cases hold that mere knowledge of a defect in a railroad track will not, as a matter of law, defeat the servant's action for injuries arising from such defect. Mere knowledge that the appliance is defective and that risk is incurred in its use will not, as a matter of law, defeat the servant's action, where the danger is not such as to threaten immediate injury, or where it is reasonable to suppose the appliance may be safely used by the use of care and caution." *O'Mellia v. Railroad*, 115 Mo. 221; *Mahaney v. Railroad*, 108 Mo. 191.

And in *Railroad v. Mares*, 123 U. S. 710, the same rule is announced with reference to an incompetent coservant. Mere knowledge will not bar a recovery, but it is for the jury, under all the circumstances, to say

whether the plaintiff's failure to refuse to work with him would be contributory negligence on his part. Justice MATTHEWS well said: "A suitable judgment on that question can only be reached by carefully weighing the probable consequences of both courses of conduct, and it might well happen that even at the risk of injury to himself, occasioned by the unskillfulness of his coemployee, the plaintiff might still reasonably be regarded as under a duty not suddenly and instantly to refuse to continue in the conduct of the business of his principal. Many cases might be conceived in which the latter course might even increase the danger to the plaintiff himself and entail great injury and loss to others." See, also, *Williams v. Railroad*, 109 Mo. 475.

So, in this case, although Mr. Francis was entitled by the law of the land to demand of defendant that it should employ a competent engineer to manage the engine with which he was to work, and was convinced that Preston was not such an one, still his fidelity to his employer, who was engaged as a public carrier, demanded he should not quit its service without giving it a reasonable opportunity of supplying competent men in place of the strikers, and he might well have concluded that Preston would learn the signals and that it was not necessarily dangerous to work with him, and his mere knowledge of Preston's incompetency will not bar his widow, but it was properly left to the jury to find whether, under the circumstances, he was negligent in attempting to board the engine that night, and they have found otherwise, and their finding will not be disturbed on this ground.

There is no evidence that Francis refused to get on the engine when it was standing still.

II.   The first and sixth instructions are assigned as error.   They are as follows:

"1. The court instructs the jury that, if they believe from the evidence that Charles Francis, while in the employment of the defendant as a switchman, was run over by a switch engine in the service of the defendant at or near the city of St. Joseph, Missouri, on or about the twenty-sixth or twenty-seventh day of March, 1888, and that he was thereby wounded and injured and died within a short time thereafter from said wound and injuries, and that said switch engine was, at the time it ran over said Francis (if the jury believe it did run over him), in charge of one Henry Preston, and that said Preston was at said time an engineer in the employment of defendant in charge of, and running and operating, said switch engine, and that said Preston was then and there, and before that time, unskillful, unable and incompetent to handle and control said engine, and did not understand the signals in use by the defendant in its yards, and that through, and because of, his said inability, incompetency and unskillfulness he ran said engine over said Francis, thereby causing the injuries that resulted in, and caused, his death, without any carelessness or negligence on the part of the said Charles Francis contributing thereto, and that at, and before, the time of the said injury to said Francis the defendant knew, or by the exercise of ordinary care and prudence could have known, that said Preston was unskillful, incompetent and unable to handle and control said engine, in time to have removed him therefrom by the exercise of ordinary care and prudence on its part before said injury to said Francis, and that the defendant, with such knowledge or means of knowledge on its part, negligently and 'carelessly kept said Preston in its employment and in charge of said engine until after said Francis was injured, and that the injuries to said Francis were caused by the said carelessness and negligence of the defendant and the

unskillfulness, incompetency and inability of said Preston to handle and control said engine, without any carelessness on the part of said Francis contributing thereto, and that the plaintiff was the wife, and is now the widow, of said Charles Francis, then the jury will find for the plaintiff in the sum of $5,000, provided, the jury further believes from the evidence that said Francis had no knowledge of the existence of the rule read in evidence by the defendant, or that at and before the time said Francis was injured it was the regular custom and established usage among the switchmen employed by the defendant in its said yards to disregard said rule and to get on the footboard on the front and rear end of the switch engine from the track and from the middle of the track while the switch engines were moving toward them, and that the defendant's superior officers or representatives in charge and control of said switchmen, knew of, and acquiesced in, said usage and custom, and provided the jury believe from the evidence that the danger of working with said Preston, on account of his unskillfulness, incompetency and inability to handle and control said engine (if the jury believe he was unskillful, incompetent and unable to handle and control it) was not so apparent, before said Francis was injured, that a reasonably prudent and careful man would refuse to work with him."

"6. Although the jury may believe from the evidence that Preston was unskillful, incompetent and unable to handle and control an engine, still if they believe that the danger in working with said Preston was not so obvious that an ordinarily prudent and careful man would refuse to work with said Preston, then the fact that Charles Francis may have known of the unskillfulness, incompetency and inability of said Preston to handle and control said engine, is no defense to this suit."

These instructions concisely and clearly state the law of the case. For the reasons already given, they lay down the measure of the responsibility of both the deceased and defendant and nothing remains to be said. The objections to them were properly overruled.

Defendant also complains of plaintiff's second instruction, viz.:

"2. The court instructs the jury that although they may believe from the evidence that the defendant had, prior to the time said Francis was injured, and on or about May 12, 1887, adopted the order or rule read in evidence by the defendant, and that said order or rule had not been rescinded up to the time said Francis was injured, still the fact that there was such a rule or order is no defense to this suit, unless said Francis had notice of the existence of said rule or order, and the court instructs the jury that the burden of proving, not only that there was such a rule or order, but also that said Francis had notice thereof, is upon the defendant."

Along with this instruction the court gave two others, numbered 11 and 12:

"11. The court instructs the jury that it was the duty of the defendant to make reasonable rules and regulations for the guidance and instruction of its switchmen while engaged in the performance of their duty in its service, *and it was the duty of the switchmen engaged in its service to use due care and diligence in order to acquaint themselves with such orders, rules and regulations, if placed or posted at the usual place or places where such orders are posted, as the defendant had promulgated to govern, control and regulate their conduct, and to instruct them as to the manner in which they could perform their duties;* and it was the duty of the men in the employ of the defendant to obey such rules so promulgated if they knew of their existence.

VOL. 127—43

"12.  If you find from the evidence that Charles Francis, with the knowledge of and in violation of the rules read in evidence and published and promulgated by the defendant, if so published, for the government of his conduct while in the discharge of his duties as a switchman in the defendant's service, attempted to get upon the engine and fell and was run over and injured while so doing, your verdict must be for the defendant, provided you further find from the evidence that there was no established usage or custom on the part of the yard men in violation of said rule."

Now, there was no direct testimony that the deceased had actual knowledge of the rule or special order, and there was evidence, as already said that all switchmen who read it in the order book in the yard were required to append their names.  So that it appeared that Francis had the opportunity to learn of its promulgation and the court instructed that it was his duty to use due care in so doing.  These instructions taken together also fully cover the respective obligations of the master and servant.  The fact that the notice had been duly posted in the yards and roundhouse was sufficient to admit it in evidence and the court properly declared the law to be that it was the duty of plaintiff's husband to use due care in acquainting himself with it; it then became a question for the jury to decide, whether, considering the length of time and the place in which it was posted, with deceased's opportunity for seeing it, he had used due care in so doing.  The duty was reciprocal.  It was the master's duty to make and promulgate the rule and enforce it, and the servant's duty to use care in seeing that he was apprised of the rule.  This was the extent of the instructions and they correctly express the law of the case.  *Covey v. Railroad*, 27 Mo. App. 170; *Francis v. Railroad*, 110 Mo. 387; *Alcorn v. Railroad*, 108 Mo. 81;

*Rutledge v. Railroad*, 123 Mo. 121; *Railroad v. Rosenzweig*, 26 Am. and Eng. Railroad Cases, 489; *Seese v. Railroad*, 39 Fed. Rep. 487.

III. There was no error in the third and fourth instructions. There was evidence tending to show that Jeffries, the trainmaster, Cummings, the foreman of the roundhouse, and Smith, the yardmaster, all had notice of the incompetency of Preston and this was sufficient. *Williams v. Railroad*, 109 Mo. 475.

IV. The defendant complains that plaintiff's sixth instruction heretofore set out is inconsistent with the ninth instruction for defendant, which in effect tells the jury that if the deceased knew of Preston's incompetency and had complained of it and still attempted to get on the engine, plaintiff could not recover. This instruction is not the law, and as it is an error of defendant's own procuring, and in his favor, he can not complain of it here. *Baker v. Railroad*, 122 Mo. 533; *Reardon v. Railroad*, 114 Mo. 384; *Wilkins v. Railroad*, 101 Mo. 105.

V. Finally, there was no error in permitting plaintiff to prove that it was a common custom and thing for the switchmen and other employees, after the promulgation of the special order of May 12, 1887, to get on the footboard of the switch engine from the front when it was in motion; that it was done with the actual knowledge of Smith, the yardmaster, and Cummings, the foreman of the roundhouse, and there was evidence that the office of the trainmaster, Jeffries, was in the yards where the men worked, and that he was required by his position often to be in those yards and was there, and that the men were never reprimanded for breaking the rule. This evidence tended to prove that the rule was habitually violated with the knowledge of the officers of defendant. It was competent and relevant to show that the rule was not in force. Nor is

there any merit in the objections to the evidence tending to show Preston's general incompetency as an engineer, his ignorance of signals and general incapacity. Nor can defendant complain, after asking of one of the witnesses why he quit the service, that he answered, "He did so because he was afraid of being killed." Having attempted to show that the witness was actuated by ill will to the company, it was perfectly competent to show that a different motive actuated him.

The case was fairly tried under instructions, most favorable to defendant, and the verdict is supported by the evidence. There is no error and the judgment is affirmed. BURGESS, J., concurs; SHERWOOD, J., dissents.

### IN BANC.

PER CURIAM.—The foregoing opinion of GANTT, P. J., in division number two, is adopted as the opinion of the court in banc, and in accordance therewith the judgment of the circuit court is affirmed. BRACE, C. J., BARCLAY, MACFARLANE and BURGESS, JJ., concurring with GANTT, J., therein; SHERWOOD and ROBINSON, JJ., dissenting.