**Henry O. Phillabaum, Appellee, v. The Lake Erie and Western Railroad Company, Appellant.**

**Gen. No. 7,268.**

1. MASTER AND SERVANT—*when violation of Federal Safety Appliance Act not proximate cause of injury.* Where plaintiff, a switchman, in violation of the rules of the railroad company, and without notifying the engineer in charge of the switch engine, attempted to climb between the ends of cars with the drawbars approximately 14 to 17 inches apart, for the purpose of remedying a defective condition of the automatic coupler on one of the cars, and his foot was caught and crushed by the cars coming together, held, that the defective coupler furnished but a condition by which the injury was made possible and was not the proximate cause of it; that the proximate cause was the plaintiff's own negligence and violation of the company's rules, and that, therefore, there could be no recovery against the railroad company under the Federal Safety Appliance Act.

2. MASTER AND SERVANT—*effect of defective operation of automatic coupler.* The law does not require railroad companies to have their cars equipped with automatic couplers, which, under any and all conditions and at all times, will couple automatically by impact; any mechanical device is likely to fail under some conditions, and to require railroads to furnish a device which will always, and under all circumstances, work perfectly, is beyond the meaning and intent of the federal Safety Appliance Act.

3. MASTER AND SERVANT—*recovery for injuries caused by violation of rule.* The violation by an employee of a positive rule of the

master, of which he has knowledge, bars a recovery, when the violation of the rule is the proximate cause of the injury.

Appeal by defendant from the Circuit Court of Peoria county; the Hon. CHARLES V. MILES, Judge, presiding. Heard in this court at the October term, 1923. Reversed with a finding of fact. Opinion filed February 16, 1924. Rehearing denied April 2, 1924.

JOHN B. COCKRUM, J. G. McKAY and MILLER, ELLIOTT & WESTERVELT, for appellant.

HENRY R. RATHBONE and HEYL & HEYL, for appellee.

MR. JUSTICE JETT delivered the opinion of the court.

This is an appeal prosecuted from a judgment obtained by Henry O. Phillabaum, appellee, against the Lake Erie and Western Railroad Company, appellant, in the circuit court of Peoria county, for $15,000, in an action on the case, for an injury alleged to have been sustained by appellee while in the employ of appellant.

The declaration consisted of three counts. The first count is based upon the Federal Safety Appliance Act, and alleges that appellee on the 29th day of August, 1921, was in the employ of appellant as a switchman at Kokomo, in the State of Indiana; that appellant was engaged in interstate commerce and that appellee's duties required him to couple and uncouple cars; that it was the duty of appellant not to haul or use any cars in interstate commerce when the cars were not equipped with couplers which would couple automatically by impact; that appellant negligently, and wrongfully hauled and permitted to be used and hauled on its tracks, cars which were then and there not equipped with couplers which would couple automatically by impact and that the couplers on said cars would not couple automatically by impact so as to avoid the necessity of men going between the ends of the cars to effect a coupling of the same; that said cars were then and there being hauled and used in inter-

state commerce and were loaded with shipments of interstate commerce; and that by reason of the condition of the couplers it became and was necessary for appellee to go between the ends of the cars in endeavoring to effect a coupling of the same; and that by reason thereof appellee was injured while between said cars, resulting in the amputation of his leg.

The second and third counts were based upon the Employers' Liability Act [Cahill's Ill. St. ch. 114, ¶¶ 321-329], the second charging a negligent order to remove the cars, and the third, moving of the cars without any order while appellee was between them, resulting in his injury. Appellant filed a plea of the general issue. At the close of appellee's evidence, the Court, on motion of appellant, withdrew the second and third counts from the consideration of the jury.

A trial was had and the jury returned a verdict for $15,000, and judgment was entered thereon as aforesaid.

Appellee was in the employ of appellant at Kokomo, Indiana, as an extra switchman and as such was required to perform the usual duties of a switchman, such as coupling and uncoupling cars, throwing switches and giving signals to the engineer. On the day of the accident his duties required him to do work near the engine and all signals were given by him directly to the one in charge of the engine. The engineer was one J. Z. Beck and the fireman was Verna Tolle, who was an engineer but performing fireman's duties. Tolle was running the engine as engineer at the time of the accident, having exchanged work with the regular engineer about an hour prior to the time of the injury. Tolle was an experienced engineer, however, and there is no charge in the declaration of any incompetency on his part.

The switching crew of which appellee was a member, went to work about 6:30 a. m. on the morning of the accident, doing the usual switching work of a switching

crew in the yard at Kokomo, handling both loaded and empty cars. Appellee had nothing to do with the origin or destination or billing of the cars or contents and had no personal knowledge as to the origin or destination of any of the cars handled. Shortly after 11 o'clock, the foreman of the switching crew directed appellee and other members of the crew to take a T. & O. C. car from the main track to another point in the yard. The main track runs in a northerly and southerly direction and on each side of the main track there is a side track. The car to be moved was located near what is known as Havens Street and it was necessary for the engine and crew to go south on the main track from a point near the junction of appellant's tracks with the P. C. C. & St. L. R. R. some two or three blocks north of where this car was located. The engine being used was headed north and there were three cars attached to the south end of the engine. After receiving the orders to clear the main track, appellee took a position on the southeast corner of the south car attached to the engine, being a L. E. & W. box car. He stood in the stirrup provided for that purpose and gave the engineer a backup signal by motioning with his right arm. The engine being headed north, Engineer Tolle was located on the east side and in a position to see appellee and observe the signals which he gave. In response to the signal given by appellee, the engineer backed the engine and cut of cars in a southerly direction down the main track toward the T. & O. C. car, to which coupling was to be made. As the cut approached the T. & O. C. car, appellee gave an easy signal by moving his hand backward and forward in front of his body, and just as the cars came together, he gave a stop signal and the engine and cut of cars were stopped, but for some reason, the coupling did not make and the T. & O. C. car moved south on the main track about a cars length.

Appellee then stepped off the stirrup from the southeast corner of the L. E. & W. car, and walked toward

the T. & O. C. car which had stopped and then gave another backup signal to the engineer which was responded to by a movement of the engine and cut of cars in a southerly direction toward the standing car. As the cut of cars neared the standing car, appellee gave a slow signal and as they came together, a stop signal, but again the coupling did not make, and the T. & O. C. car moved south a short distance up against the head end of an extra freight train which was standing on the main track to the south of the T. & O. C. car.

Appellee then walked toward the T. & O. C. car, signaling the engineer to proceed in a southerly direction, and in response to such signal, the engine and cut of cars were moved south slowly. During this time appellee was in plain sight of Engineer Tolle, and as the cars approached the standing car, appellee gave a slow signal to which Engineer Tolle responded by reducing the speed, and a stop signal as the cars came together. Just as the cars came together, Engineer Tolle saw appellee reach in a northerly direction with his right hand as though he was taking hold of the handhold on the southerly end of the L. E. & W. car, and at the same time throw his shoulders and head in an easterly direction. As the cars came together Engineer Tolle saw someone approach appellee, causing Engineer Tolle to think that appellee had been injured. As soon as he received a signal to back up, Engineer Tolle moved northward a few feet and Brakeman Carroll of the extra freight, who had arrived at the location where appellee was, took appellee to the westerly side of the cut of cars.

When brakeman Carroll reached appellee before the cut of cars had been backed up, he discovered that appellee's right foot was fastened between the jaws of the knuckles of the couplers on the T. & O. C. and L. E. & W. cars; that is, his foot and ankle were crushed between the ends of the couplers as they had locked in coming together making the coupling. In order to re-

lease appellee's foot it was necessary for Carroll to raise the lift lever on the T. & O. C. car which was located at the northeast corner of that car, and thence signal Engineer Tolle to move back in a northerly direction. By raising the lift lever, the lock pin in the T. & O. C. coupler was released which permitted the coupler jaws to open as the L. E. & W. car was moved north.

It will be remembered that the sole count remaining in the declaration and upon which the verdict and judgment were rendered, is based upon the alleged violation of the Federal Safety Appliance Act. Under the condition of the pleadings and the evidence the liability, if any, must be determined with reference to the provisions of the Federal Safety Appliance Act, and as to whether the alleged violation was the proximate cause of the accident and resulting injury. The Federal Safety Appliance Act provides, ''It shall be unlawful * * * to haul, or permit to be hauled, or used, on its lines, any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars.'' The claim of appellee is that the couplers in use on the two cars between which he was injured, and particularly on the T. & O. C. car did not have couplers which complied with the section of the statute above quoted, and that the failure to comply with that statute was the proximate cause of the injury.

Proximate cause has been defined to be, ''An act which directly produced or concurred directly in producing the injury; and the immediate, direct, or efficient cause of injury; * * * that which, in a natural and continuous sequence, unbroken by any new cause, produces that event, and without which that event would not have occurred.'' 32 Cyc. 745.

'' 'An intervening efficient cause is a new and independent force which breaks the causal connection between the original wrong and the injury, and itself

becomes the direct and immediate, that is, the proximate cause, of an injury.' '' *Pullman Palace Car Company v. Laack,* 143 Ill. 242.

"If the negligence does nothing more than furnish a condition by which the injury is made possible, and that condition causes an injury by the subsequent independent act of a third person, the two are not concurrent and the existence of the condition is not the proximate cause of the injury." *Seith v. Commonwealth Electric Co.,* 241 Ill. 252-259.

"Before there can be a recovery on account of alleged defective condition of coupler, the evidence must show that such defective condition was proximate cause of injury." *St. Louis & S. F. R. Co. v. Conarty,* 238 U. S. 243.

"In order to enable an employee to recover when he has been injured by a car not properly equipped with automatic couplers, such improper equipment or the absence of an automatic coupler must be the proximate cause of his injury, and he has the burden to show that such was the fact." Thornton's Federal Employers' Liability Act & Safety Appliance Acts 3rd Edition, Par. 307, p. 469.

Appellee testified that, the knuckle on the north end of the T. & O. C. car was open each time as the L. E. & W. car approached and came in contact with it; that the couplers were in proper alignment but that on the two occasions prior to the time of his injury, the coupling did not make or hold. He also testified that after the second attempt and after the cut of cars was moving slowly toward the standing T. & O. C. car, he gave a stop signal and that the cars were brought to a stop when the ends of the couplers were fourteen to seventeen inches apart; that after the cars stopped he went in between the ends of the two cars, closing the knuckle on the T. & O. C. car and found that the lock pin would not drop or lock; that when he found the pin would not drop, and he examined the couplers and taking the forefinger of his right hand, placed it in the hole at the bottom of the coupler and found that the

pin was out of place and that the surface of the inside of the coupler where the pin was located, was rough, that he pulled the pin over and it dropped and locked.

He further testified that after so examining the T. & O. C. coupler and closing the knuckle, that he made no further attempt to open the knuckle on the T. & O. C. car by means of raising the lift lever or otherwise, but that he decided then to open the knuckle on the south end of the L. E. & W. car. The lift lever on the L. E. & W. car was on the southwesterly corner and in order to reach that position it was necessary that he go from his position on the east side of the two couplers to the west side. During all the time that he was working with the couplers, the testimony of appellee is that he was out of sight and view of the engineer operating the engine attached to the cut of cars. His testimony is that having decided to open the knuckle on the L. E. & W. car, which opened toward the west, he took hold of the grab iron of the T. & O. C. car with his left hand near the easterly side of the car and with his right hand took hold of the brake staff at the south end of the L. E. & W. car, put his right foot on the drawbar on the flange side of the head of the drawbar on the T. & O. C. car and attempted to raise himself over the couplers; that as he did so, the cars to his right attached to the engine moved south, bringing the drawbar of the L. E. & W. car against the drawbar of the T. & O. C. car and crushing his right foot and ankle.

He further claims that he did not, from the time the cars were stopped with the drawbars approximately 14 to 17 inches apart until they came together crushing his foot, give any signal of any kind or character to the engineer to move the cut of cars and that the cars were moved without any direction or signal from him. He further states that as he grasped the handhold on the T. & O. C. car and the brake staff on the L. E. & W. car, he threw his shoulders back toward the east and as he did so, after having placed his foot on the T. &

O. C. coupler, he felt the movement of the L. E. & W. car toward the other car but that he made no effort to take his foot from the coupler and that his foot was caught between the ends of the drawbars.

On the trial of this cause appellee offered the testimony of engineer Tolle, who was operating the engine at the time of the injury to appellee, which was contained in a deposition taken on behalf of appellee, and the testimony of Tolle is to the effect that after the second attempt to couple the cars, appellee then gave the signal to back up which was obeyed by Tolle, and that no stop signal of any kind or character was given by appellee; that no stop was made until the cars came in contact and that appellee during all the time the cars were being moved, was in plain view of Tolle, and that appellee did not go in between the cars at any time after the second attempt to couple the same.

Engineer Tolle was also a witness on behalf of appellant upon the trial of said cause, and his testimony was to the same effect as his deposition, namely, that there was no movement of the cut of cars at any time without the direction and signal of appellee, and that appellee was at all times, while the cars were in motion, in his view.

Appellee alone, was in position to know whether the knuckle on the couplers was open or closed at the time of the attempt to couple. While he testified that one of the knuckles was open and the other closed on the first two attempts, the fact that the couplers operated properly and without difficulty immediately following the injury indicates that the failure to couple in the first place was on account of the knuckles not being in proper alignment, and the failure on the part of appellee to so align them before attempting to make the coupling, or *that one of the knuckles was not open.*

At the time appellee claims to have examined the coupler on the T. & O. C. car, and to have discovered that the lock pin would not drop by reason of the

roughness of the surface of the coupler, if the testimony of Tolle is true, he was standing at the northeast corner of the T. & O. C. car in sight of Engineer Tolle and not in a position where he could have examined the coupler.

The record also disclosed that the deposition of Engineer Beck was taken by appellee prior to the trial and read in evidence by him. Beck testified as to the two attempts to couple the cars prior to the time of the accident and that the third time the cars came together and stopped and Tolle said to him, "I believe something has happened to Otto," appellee. Beck further testified that after each attempt to couple, the engine and cut of cars stood still until a signal was received from appellee, and that there was no stopping of the engine or cut of cars from the time they started after the second attempt until the cars came together on the third attempt; that following the injury he operated the engine when the cars were coupled together by brakeman Carroll, a member of the extra crew; that the cars attached to his engine were about ten feet from the T. & O. C. car when he received the signal to back up, some three or four minutes after the accident; that when the signal was given, Carroll stood at the north end of the T. & O. C. car where he could see him and that following the receipt of the signal to back up, he proceeded to obey such signal and move the cars south against the T. & O. C. car when the coupling was made; that the coupling held and only one attempt was made to couple the same.

Appellee also took the depositions of E. W. Smith and C. R. Eshelman prior to the trial of the case but did not offer or read them in evidence. Appellant offered them. Witness Smith testified he was Chief Inspector for the Lake Erie and Panhandle roads on the day of this occurrence and examined the cars within a few minutes after the accident occurred. His testimony is to the effect that he examined the couplers on both ends of the T. & O. C. car and found that they

worked very good; that they were O. K.; that is, everything was all right, that there was nothing wrong or out of repair with reference to the knuckles, that they worked good; that he closed the knuckles and lifted the lift lever up and shut or closed it; that on each end of the cars there was nothing out of repair with reference to the automatic couplers; that he was familiar with the requirements of the Interstate Commerce Commission with reference to the safety appliances, knuckles, lift levers and grab irons and that his examination disclosed that there was nothing out of repair on either car; that he made a report to the company of the condition of each car.

The witness Eshelman, the other inspector, whose deposition was read by appellant, testified that he examined both cars and found the coupling apparatus in perfect condition; that he signed the joint report of inspection with Inspector Smith. The testimony of the inspectors with reference to the condition of the cars in question, is corroborated by the testimony of brakeman Carroll who made the coupling immediately following the injury to appellee. After Carroll had assisted appellee in releasing his foot and taking him to a shady spot beside the right-of-way, he was ordered by his conductor to clear the main track and then couple the two cars together so that the track could be cleared.

The following question was put to Carroll, "Tell us what you did from the time you got back to the car until you got the cars coupled and started up to the upper end of the yard. Tell us in detail just what you did in reference to making that coupling." He answered, "After I laid him in the shade and as I stated before, I went back to the cars where the accident happened, and backed up the engine against this car and made the coupling and pulled the cars down to the passing track and cleared the main and lined this switch up for the main track; I just backed them up.

The knuckles were open on T. & O. C. car up against the engine; I didn't do anything, only backed up and coupled on to the car. The coupling made when I went back. It made perfectly when we went back and held when we started ahead and continued to hold until we took the car up to the north end of the yards. There was nothing unusual in the way that coupling was made from any other coupling.''

Brakeman Carroll also testified that the coupling made when appellee's foot was caught and that he pulled the pin in order to release appellee's foot. Carroll is corroborated in this statement by Car Inspector Smith, that he found blood on the face of the knuckles.

Appellee was taken to a hospital shortly after receiving the injury and Dr. Hamilton, a company physician, was called and the Doctor testified, that appellee, in reply to a question as to how the accident occurred, stated that he was pushing the coupling over with his foot and engine backed up.

It is shown by the evidence, appellee was familiar with the rules and safety regulations issued by appellant, and that he had receipted for a copy of the same. The regulations prohibit any employee from kicking drawbars, while cars are in motion, and also prohibit any employee from going between the ends of cars to adjust couplers, or for any other purpose, without bringing the cars to a stop and having them separated at least fifty feet.

The evidence shows appellee did not cause the cars to be separated at least fifty feet before attempting to make any adjustment of the couplers, and that he did not personally notify the engineer in charge of the engine, that he intended to go between the cars for any purpose.

In the suit of *McCalmont v. Pennsylvania Railroad Company,* 283 Fed. 736, decided October 4, 1922, affirming a judgment of the District Court of the United States, 273 Fed. 231, it was claimed that the Federal

Safety Appliance Act had been violated. McCalmont was foreman of car inspectors for the Pennsylvania Railroad Company at Conway, where extensive yards were located. A car which had just been loaded at that point was found to have a coupler which required repairs, and the car was switched to an adjoining track. McCalmont, in the course of his inspection, observed the defective condition of the coupler and while repairing the same was injured by reason of another car being kicked against it. McCalmont failed to comply with the rule of the company, of which he had knowledge, requiring the display of a flag or light at the end of the car before attempting to work upon it.

The circuit court of appeals held that the proximate cause of the injury to McCalmont, even though it be admitted that it was a violation of the Federal Safety Appliance Act, which furnished the condition permitting the accident, was the failure of McCalmont to observe and comply with the safety rule, provided for his protection. A petition for writ of certiorari was denied January 22, 1923, by the Supreme Court of the United States, 43 Sup. Ct. Rep. 250.

In the case of *Francis v. Kansas City, etc. Railroad Company,* 110 Mo. 387, 19 S. W. 935, it is said: "It would be most unreasonable and unjust, after imposing upon the master the duty of promulgating a rule for securing the safety of his servant, to permit the servant to recover from the master damages for injuries which the observance of the rule would have prevented. As the master is bound, at his peril, to make the rules, the servant should be equally bound, at his peril, to obey them. In such case, the disaster is brought upon the servant by his own voluntary act, and he, and not the master, who had discharged his duty, should bear the consequences. So it has been uniformly ruled."

It is the contention of appellee that the couplers were defective because they did not couple automatically by impact, on the two attempts made immediately

prior to the time that appellee was injured. It is insisted by appellant that the law does not require it to have had a coupler, which under any and all conditions and at all times, would couple automatically by impact. It is said by appellant, that any mechanical device is likely to fail under some conditions, and to require a carrier to furnish a device which will always, and under all circumstances, work perfectly, is beyond the meaning and intent of the Federal Safety Appliance Act.

In *St. Louis Southwestern Railway Company v. Bounds,* (Tex. Civ. App.), 244 S. W. 1099, a case in which Bounds, a brakeman employed by the railway company, and having the duty of giving signals, as well as coupling cars, had attempted to couple certain cars together. After the coupling had apparently been made he connected the air hose and gave the signal for the engine to pull ahead. When the engine moved, he discovered that the coupling had not made and after the forward car had been moved some six feet, the same was stopped and he went in between the cars for the purpose of doing something in connection with the coupling apparatus. While in that position, the cars noiselessly rolled down against the engine, crushing him between the two drawbars. Immediately following the accident it was discovered that the coupling between the cars and engine had made. Recovery was sought on the ground that there had been a violation of the Federal Safety Appliance Act. A judgment was had in the Court below but the court of appeals reversed the same on the ground that there was no liability under the Federal Safety Appliance Act, it not appearing that there was any defect.

In deciding the case, the court, at page 1102, said: "Neither the language nor the purpose of the statute requires the equipment of cars with appliances that will operate with unfailing precision on every occasion. Such a degree of perfection is not essential to the

safety of the employee, for whose protection the equipment is required. It may be expected from the very construction of such devices that in the course of time, and under the unavoidably varying conditions incident to railway traffic, there will be occasions when more than one impact may be required in order to effect a coupling.   *   *   *   It would be manifestly unfair to hold that the carrier had violated the statute until the inefficiency of the device had been disclosed by some reasonable test that would justify the conclusion that it was defective.''

In view of the facts as disclosed by this record, and the law arising therefrom, we are of the opinion appellee has not made out his case as alleged in the declaration. We are not prepared to say the weight of the evidence sustains the contention of appellee, that the alleged defective condition of the coupler, or either of them, was the proximate cause of the injury sustained by him. The record fails to disclose facts by which it can be fairly claimed appellee's act, in climbing between the cars, was set in motion by a defective condition of the couplers or either of them.

If we take the statement of appellee, that it was improper movement of the cars, which caused the accident, it necessarily follows that it was occasioned by an intervening cause. The condition of the coupler as claimed by appellee cannot under the facts, be said to be a concurrent, proximate cause, with the improper movement of the cars. If the alleged negligence does nothing more than furnish a condition by which an injury is made possible, and that condition causes an injury by the subsequent, independent act of a third person, the two are not concurrent acts of negligence, and the condition complained of is not the proximate cause of the injury. *Curran v. C. & W. I. R. R. Co.*, 289 Ill. 111-119.

If it be true as insisted by appellee, that he closed the coupler on the south car, and remedied what defect

there was in the coupler, and then attempted to cross the track between the cars, the accident cannot be said to be caused by the defect, but a new agency intervened; that is, his own act in attempting to cross the track between the cars, or to connect the couplers in position.

The rules of appellant company were known to appellee; the violation by an employee of a positive rule of which he has knowledge, bars a recovery, when the violation of the rule is the proximate cause of the injury.

We therefore, conclude that there can be no recovery in this cause and that the judgment must be reversed which is accordingly done.

*Judgment reversed with a finding of fact.*

We find that the injury to appellee was not caused by the alleged defective condition of the coupler but was caused by the contributory negligence of the appellee and for this reason there can be no recovery in this case.